# MEMPHIS & LITTLE ROCK RAILROAD COMPANY *v.* RAILROAD COMMISSIONERS.

IN ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

Submitted November 25, 1884.—Decided December 22, 1884.

A statute exempting a corporation from taxation confers the privilege only on the corporation specially referred to, and the right will not pass to its successor unless the intent of the statute to that effect is clear and express.

*Morgan* v. *Louisiana*, 93 U. S. 217 ; *Wilson* v. *Gaines*, 103 U. S. 417 ; and *Louisville & Nashville Railroad Company* v. *Palmes*, 109 U. S. 244, affirmed.

The franchise to be a corporation is not a subject of sale and transfer, unless made so by a statute, which provides a mode for exercising it.

A franchise to be a corporation is distinct from a franchise, as a corporation, to maintain and operate a railway : the latter may be mortgaged, without the former, and may pass to a purchaser at a foreclosure sale.

A mortgage of the charter of a corporation, made in the exercise of a power given by statute, confers no right upon purchasers at a foreclosure sale to exist as the same corporation : if it confers any right of corporate existence upon them, it is only a right to reorganize as a corporation, subject to laws, constitutional and otherwise, existing at the time of the reorganization.

This was a bill in equity filed in the Chancery Court of Pulaski County, Arkansas, seeking to enjoin the Board of Railroad Commissioners of the State from appraising, for the purposes of taxation, any part of the property of the plaintiff in error, on the ground that it is exempted from taxation by a contract with the State contained in its charter of incorporation. The Supreme Court of the State, on appeal, affirmed the decree of the Chancery Court dismissing the bill. That decree of the Supreme Court was brought here by writ of error, for review, on the allegation that it enforced a law of the State impairing the obligation of a contract in violation of the rights of the plaintiff in error under the Constitution of the United States.

The question arises and is to be determined upon the following case :

The Memphis and Little Rock Railroad Company was chartered by an act of the General Assembly of the State of Arkansas, approved January 11, 1853. This act authorized the formation of a company to be a body corporate for the purpose of establishing communication by a railroad between the city of Memphis in Tennessee and Little Rock in Arkansas, and commissioners were named therein to open books for subscriptions to its capital stock. This was fixed for the purpose of organization at $400,000, to be increased to $2,000,000 at the pleasure of the company. When the necessary amount of capital stock had been subscribed, the subscribers were authorized

to organize by the election of a board of directors. The 9th section of the act is as follows:

" SEC. 9. The said company may at any time increase its capital to a sum sufficient to complete the said road, and stock it with anything necessary to give it full operation and effect, either by opening books for new stock or by selling such new stock, or by borrowing money on the credit of the company, and on the mortgage of its charter and works; and the manner in which the same shall be done, in either case, shall be prescribed by the stockholders at a general meeting," &c. Laws of Arkansas, 1852–3, 132–3.

It also contains the following:

" SEC. 28. The capital stock of said company shall be exempt from taxation until the road pays a dividend of six per cent., and the road, with all its fixtures and appurtenances, including workshops, warehouses and vehicles of transportation, shall be exempt from taxation for the period of twenty years from and after the completion of said road." Ib. 136.

The company was organized under this act, and afterwards, in order to borrow money for the prosecution of the enterprise, issued its bonds to the amount $1,300,000, dated May 1, 1860, having thirty years to run, with interest at eight per cent. per annum, and, to secure the payment of the same, executed and delivered a mortgage to Tate, Brinkley and Watkins, as trustees for the bondholders, whereby it conveyed to them, in trust, the Memphis and Little Rock Railroad, its road-bed, right of way, and all works and rolling stock of or belonging to the company, " together with the charter by which said company was incorporated and under which it is organized, and all the rights and privileges and franchises thereof," and also all the lands, &c., belonging to said company.

Subject thereto, a second mortgage was made by the company on March 1, 1871, conveying all its property and franchises to Henry F. Vail, in trust for the holders of bonds secured thereby, amounting to $1,000,000. Default having been made by the company in the payment of interest on this loan, Vail, the trustee, in execution of the power conferred in the mortgage, sold and conveyed the mortgaged property, the

title to which became vested in Stillman Witt and his associate bondholders, who organized the Memphis and Little Rock Railway Company, to which, on November 17, 1873, the said property was conveyed. This railway company, on December 1, 1873, issued its bonds to the amount of $2,600,000, and, to secure the same, by a deed of that date, conveyed all the franchises, privileges and property so acquired by it to trustees, of whom Pierson, Matthews and Dow became successors, in trust for the bondholders. The Memphis and Little Rock Railroad Company, the original corporation, made default in the payment of interest accruing upon the bonds secured by the mortgage of May 1, 1860, and its successor, the Memphis and Little Rock Railway Company also made default in the payment of interest maturing on the bonds secured by the deed of December 1, 1873. Afterwards, on November 12, 1876, a bill in chancery was filed, in the Circuit Court of the United States for the Eastern District of Arkansas, by the trustees against the two companies, to foreclose those mortgages, in which suit a final decree was rendered ordering a sale of the property described in the same, embracing the property and franchises of the said companies, and the charter of the Memphis and Little Rock Railroad Company; and a sale thereof was made and confirmed, and a conveyance of the same executed to Pierson, Matthews and Dow, in trust for the holders of the bonds of the Memphis and Little Rock Railway Company, secured by the deed of trust executed by that company. On April 28, 1877, the holders of these bonds executed certain articles of association, by which, after reciting the premises, they organized themselves into a company, claiming to become a corporation, under the name of "The Memphis and Little Rock Railroad Company as re-organized," under and by virtue of the provisions of the act of January 11, 1853, for the incorporation of the original company; and afterwards, on April 30, 1877, Pierson, Matthews and Dow conveyed to said company the property and franchises, including the charter of January 11, 1853; and thereupon the bill proceeds :

"Complainant submits that, having thus duly purchased said charter of the Memphis and Little Rock Railroad Company

under the power therein contained, and having organized thereunder, it is the owner and holder thereof, and that it has and is entitled to all the privileges and benefits in said act of the General Assembly mentioned and set forth, among others to the contract contained in said section 28, by which the road, with all the franchises and appurtenances, including work-, shops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from and after the date of the completion of said road. Complainant further states that said road was not completed till the 15th day of November, 1874, and that the time of the exemption thereafter from taxation has not expired. It further states that the defendant herein first mentioned, acting as a Board of Railroad Commissioners for this State, have demanded from the complainant a detailed inventory of all the rolling stock belonging to the company, and the valuation thereof, as provided in section 48 of an act of the General Assembly of the State of Arkansas, approved March 31, 1883, entitled 'An Act to revise and amend the revenue laws of the State of Arkansas,' and have also demanded from the complainant a statement or schedule showing the length of the main and all the side tracks, switches and turn-outs in each county in which the road is located, and the value of all improvements, stations and structures, including the railroad track, as provided in section 46 of the same act.

"Complainant being willing, so far as it may without injury to itself, to comply with the laws of this said State, has, in compliance with the demand made upon it, made and returned said schedule to the said board, accompanying the same with a protest against any of the property in said schedule contained being assessed for taxation, in which protest complainant stated the grounds upon which said property was exempt from taxation.

"Complainant states and submits that all this property contained in the said schedules, [copies] of which it herewith files, marked 'I' and 'J,' and all the property described in said sections 46 and 48 of said act, are the identical property which is exempt from taxation by the contract in said charter contained."

On December 9, 1874, an act was passed by the General Assembly of Arkansas, whereby the purchasers of a railroad of any corporation of the State, and their associates, acquiring title thereto by virtue of a judicial sale, or of a sale under a power contained in a mortgage or deed of trust, were authorized to organize themselves into a body corporate, vested with all the corporate rights, liberties, privileges, immunities, powers and franchises of and concerning the railroad so sold, not in conflict with the provisions of the Constitution of the State, as fully as the same were held, exercised and enjoyed by the corporation before such sale. A certificate of such organization was required to be filed in the office of the Secretary of State within six months, specifying certain particulars. Laws of Arkansas, 1874–5, p. 57. Prior to the passage of that act there seems to have been no statute authorizing the formation of such corporations, or prescribing a mode for their organization.

In 1853, when the Memphis and Little Rock Railroad Company was chartered and organized as a corporation, the Constitution of Arkansas then in force permitted the enactment of special acts of incorporation, and without any restriction upon the power to exempt corporations and their property from taxation. In 1868 a new Constitution was adopted by the people of the State, which provided (art. 5, sec. 48), that, " the General Assembly shall pass no special act conferring corporate powers. Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed: . . . The property of corporations, now existing or hereafter created, shall forever be subject to taxation the same as the property of individuals;" and in art. 10, sec. 2, that, " laws shall be passed taxing by a uniform rate all moneys, credits, investment in bonds, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money."

It was decided by the Supreme Court of Arkansas in the case of *Oliver* v. *Memphis and Little Rock Railroad Co.*, 30 Ark. 128, that the 28th section of the act of January 11, 1853, incorporating that company, already quoted, was a contract be-

tween it and the State, which could not be impaired by these provisions of the State Constitution, because it was protected by the Constitution of the United States.

On October 13, 1874, the present Constitution of Arkansas was adopted and took effect. Among its provisions are these: That the General Assembly shall pass no special act conferring corporate powers (art. 12, sec. 2); that corporations may be formed under general laws, which laws may, from time to time, be altered or repealed (art. 12, sec. 6); that all property subject to taxation shall be taxed according to its value; that the following property shall be exempt from taxation: public property used exclusively for public purposes, churches used as such, cemeteries used exclusively as such, school buildings and apparatus, libraries and grounds used exclusively for school purposes, and buildings and grounds and materials used exclusively for public charity (art. 16, sec. 5); that all laws exempting property from taxation, other than as above provided, shall be void (art. 16, sec. 6); that the power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the State may be a party (art. 16, sec. 7); and that the General Assembly shall not remit the forfeiture of the charter of any corporation then existing, or alter or amend the same, or pass any general or special law for the benefit of such corporation, except upon condition that such corporation should thereafter hold its charter subject to the provisions of the Constitution (art. 17, sec. 8).

It was in April, 1877, that the plaintiff in error was organized as a corporation deriving its authority for that purpose, as it claimed, under the special act of January 11, 1853. On behalf of the defendant in error, it is claimed that the plaintiff in error had no power to organize as a corporation, except as enabled by the act of December 9, 1874.

*Mr. B. C. Brown* for plaintiff in error.—Under the statutes of Arkansas the pleadings amount to an admission that the original charter contained an exemption from taxation, that there was authority to mortgage that charter, that it was mortgaged, that the mortgage was foreclosed, and that the mortgaged

charter was acquired by the plaintiff in error under the fore-closure sale. We admit that a corporation takes only so much as is granted in express words, or by fair implication; that an exemption from taxation is not to be presumed; that the party claiming the exemption must show his right. But there is another proposition—which the court overlooked—that a status or right shown to have been once established or existing is presumed to continue, and it is for him who alleges that it has ended or changed to show when and how the end or change occurred. It is conceded that the property held by plaintiff and now sought to be taxed was at one time exempt. This was established by the Supreme Court of the State itself, in *The State* v. *Oliver*, 30 Ark. 129. Before this cause was instituted, both the Supreme Court of Arkansas and this court had held that "a State can no more impair the obligation of a contract by adopting a Constitution than by passing a law." *Jacoway*, v. *Denton*, 25 Ark. 625; *White* v. *Hart*, 13 Wall. 646. The contract here was that the company created by the act of 1853 might "mortgage its charter." Not mortgage the "franchise." Not mortgage the "right to build and operate a railroad." Not mortgage the "exemption from taxation," but mortgage the charter. The words "charter," and "act of incorporation" are used "convertibly," and mean the same thing. *Humphrey* v. *Pegues*, 16 Wall. 244. The grant of a power grants everything necessary to give it beneficial effect; *United States* v. *Fisher*, 2 Cranch, 358; *McCulloch* v. *Maryland*, 4 Wheat. 316, 428; *Fletcher* v. *Oliver*, 25 Ark. 289, 299; *N. W. Fertilizing Co.* v. *Hyde Park*, 70 Ill. 634. The power to pledge the franchises and rights of a corporation implies, as incident thereto, the power to pledge everything that may be necessary to the enjoyment of the franchise, and upon which its real value depends. *Phillips* v. *Winslow*, 18 B. Mon. 431. Either the whole charter passed or nothing. There is no middle ground. The exemption from taxation was not separable from the body of the charter. This court has held that, with legislative permission, any privilege or immunity may pass. *Humphrey* v. *Pegues*, cited above; *Tomlinson* v. *Branch*, 15 Wall. 460; *Pacific Railroad Co.* v. *McGuire*, 20 Wall. 36. In

the cases of *Morgan* v. *Louisiana*, 93 U. S. 217, and *Louisville & Nashville Railroad Co.* v. *Palmes*, 109 U. S. 244, relied upon by the other side, there was no such permission.

*Mr. U. M. Rose,* for defendants in error.

Mr. Justice Matthews delivered the opinion of the court. He recited the facts as above stated, and continued:

The case of the plaintiff in error rests entirely upon the words of the ninth section of the act of incorporation of the Memphis and Little Rock Railroad Company of January 11, 1853, by which it was empowered to borrow money " on the credit of the company and on the mortgage of its charter and works." It is argued that these words confer power upon the company to convey to its bondholders, by way of mortgage and on foreclosure, to purchasers absolutely, all the property of the company, and all its franchises, including the franchise of becoming and being a corporation, in the sense of acquiring the right to organize as such under the act as successor to, and substitute for, the original company, precisely as if the act had named them as corporators and endowed them with the corporate faculty. And this being assumed, it is thence inferred that the exemption contained in section 28 of the act applies to the substituted corporation as though no change of corporate existence had taken place; and thus, it is insisted, the case is taken out of rule of decision established in *Morgan* v. *Louisiana*, 93 U. S. 217; *Wilson* v. *Gaines*, 103 U. S. 417, and *Louisville & Nashville Railroad Company* v. *Palmes*, 109 U. S. 244. According to the principle of those decisions, the exemption from taxation must be construed to have been the personal privilege of the very corporation specifically referred to, and to have perished with that, unless the express and clear intention of the law requires the exemption to pass as a continuing franchise to a successor. This salutary rule of interpretation is founded upon an obvious public policy, which regards such exemptions as in derogation of the sovereign authority and of common right, and, therefore, not to be extended beyond the

› exact and express requirement of the grants, construed *strictissimi juris*.

It is not claimed that the assignment of the charter, by way of mortgage and subsequent judicial sale, constituted the purchasers to be the identical corporation that the mortgagor had been; for that would involve an assumption of its obligations and debts as well as an acquisition of its privileges and exemptions; but, it is insisted, that it resulted in another corporation in lieu of the original one, entitled to all the provisions of the charter, by relation to its date, as though it had been originally organized under it.

But such a construction of the words authorizing a mortgage of the charter and works of the company, is, in our opinion, beyond the intention of the law and altogether inadmissible.

There is no express grant of corporate existence to any new body. At the time when this charter was granted, in 1853, there was no general law in existence in Arkansas authorizing the formation of corporations. All such grants were by special act. Neither was there any law authorizing the purchasers of railroads at judicial sale under mortgages of the property and franchises of the company, to organize themselves into corporate bodies, such as was first passed in 1874. There is not in the act of January 11, 1853, for the incorporation of the Memphis and Little Rock Railroad Company, any reference to such a right, as vested in the mortgage bondholders or other purchasers at a sale under a foreclosure of the mortgage, nor is there any mode or machinery prescribed in the act for such an organization. The desired conclusion rests entirely on the inference deduced from the mortgage of the charter, and is an attempt to create a corporation by a judicial implication. But, as was said by this court in *Central Railroad and Banking Co.* v. *Georgia*, 92 U. S. 665, 670, " it is an unbending rule that a grant of corporate existence is never implied. In the construction of a statute every presumption is against it."

The application of this rule is not avoided by the claim that the present is not the case of an original creation of a corporate body, but the transfer, by assignment of a previously existing charter, and of the right to exist as a corporation under it.

The difference is one of words merely. The franchise of becoming and being a corporation, in its nature, is incommunicable by the act of the parties and incapable of passing by assignment. "The franchise to be a corporation," said Hoar, J., in *Commonwealth* v. *Smith*, 10 Allen, 448, 455, "clearly cannot be transferred by any corporate body of its own will. Such a franchise is not, in its own nature, transmissible." In *Hall* v. *Sullivan Railroad Co.*, 21 Law Reporter, 138 (2 Redfield's Am. Railway Cases, 621; 1 Brunner's Collected Cases, 613), Mr. Justice Curtis said: "The franchise to be a corporation, is, therefore, not a subject of sale and transfer, unless the law, by some positive provision, has made it so, and pointed out the modes in which such sale and transfer may be effected." No such positive provision is contained in the act under consideration, and no mode for effecting the organization of a series of corporations under it is pointed out, either in the act itself or in any other statute prior to that of December 9, 1874.

The franchise of being a corporation need not be implied as necessary to secure to the mortgage bondholders, or the purchasers at a foreclosure sale, the substantial rights intended to be secured. They acquire the ownership of the railroad, and the property incident to it, and the franchise of maintaining and operating it as such; and the corporate existence is not essential to its use and enjoyment. All the franchises necessary or important to the beneficial use of the railroad could as well be exercised by natural persons. The essential properties of corporate existence are quite distinct from the franchises of the corporation. The franchise of being a corporation belongs to the corporators, while the powers and privileges, vested in and to be exercised by the corporate body as such, are the franchises of the corporation. The latter has no power to dispose of the franchise of its members, which may survive in the mere fact of corporate existence, after the corporation has parted with all its property and all its franchises. If, in the present instance, we suppose that a mortgage and sale of the charter of the railroad company created a new corporation, what becomes of the old one? If it abides for the purpose of responding to obligations not satisfied by the

sale, or of owning property not covered by the mortgage nor embraced in the sale, as it may well do, and as it must if such debts or property exist, then there will be two corporations co-existing under the same charter. For, "after an act of disposition which separates the franchise to maintain a railroad and make profit from its use, from the franchise of being a corporation, though a judgment of dissolution may be authorized, yet, until there be such judgment, the rights of the corporators and of third persons may require that the corporation be considered as still existing." *Coe* v. *Columbus, Piqua & Indiana Railroad Co.*, 10 Ohio St. 372, 386, per Gholson, J.

If, as required by the argument for the plaintiff in error, we regard and treat the franchise of being a corporation as an incorporeal hereditament, and an estate capable of passing between parties by deed, or of being charged by way of mortgage and of being sold under a power or by virtue of judicial process, the logical consequences will be found to involve insuperable difficulties and contradictions. In the present case, for example, after the execution of the first mortgage, we should have the railroad company continuing as a corporation *in esse*, and the trustees for the bondholders, or their beneficiaries, or assigns, a corporation *in posse ;* and, after condition broken, the company would hold the title to its own existence as a mere equity of redemption. That equity it makes the subject of a second mortgage, and, in default, the beneficiaries under the power of sale became purchasers of the franchise, and organize themselves, by virtue of it, into the Memphis and Little Rock Railway Company. The latter can hardly claim the status of a corporation at law, as the legal title to the franchise of being a corporation had never passed to it, on the supposition that it might pass by a private grant; and, if a corporation at all, it could only be regarded as the creature of equity, according to the analogy of equitable estates, a nondescript class hitherto unknown in any system of law relating to the subject. It finally was displaced by the judicial sale, under which the plaintiff in error organized as successor to both. In the mean time, the original corporation has never been dissolved, and for all purposes not covered by the mort-

gage, still maintains an existence as a corporate body, capable of contracting, and of suing and being sued. A conception which leads to such incongruities must be essentially erroneous.

If we concede to the argument for the plaintiff in error the position, that the language used, which authorizes the mortgage of the charter, may be taken in a literal sense, still the assignment would transfer it, in the very state in which it might be at the date of the transfer. But at that date the only corporation which the charter provided for had already been organized. The only powers conferred upon corporators to that end had already been exercised and exhausted. The bondholders under the mortgage, and their assignees, the purchasers at the sale, therefore took, and could take, nothing else than the charter, so far as it remained unexecuted, with such franchises and powers as were capable of future enjoyment and activity, and not such as, having already spent their force by having been fully exerted, could not be revived by a conveyance. This would include, by the necessity of the case, the franchise to organize a corporation, which can only be exerted once for all; for the simple act of organization exhausts the authority, and having once been effected, is legally incapable of repetition.

It is a mistake, however, to suppose that the mortgage and sale of a charter by a corporation, in any proper sense which can be legally imputed to the words, necessarily conveys every power and authority conferred by it, so far, at least, as to vest a title in them, as franchises, irrevocable by reason of the obligation of a contract. In many, if not in most, acts of incorporation, however special in their nature, there are various provisions which are matters of general law and not of contract, and are, therefore, subject to modification or repeal.

Such, in our opinion, would be the character of the right in the mortgage bondholders, or the purchasers at the sale under the mortgage, to organize as a corporation, after acquiring title to the mortgaged property, by sale under the mortgage, if, in the charter under consideration, it had been conferred in express terms, and particular provision had been made as to the mode of procedure to effect the purpose. It would be matter

of law and not of contract.   At least, it would be construed as
conferring only a right to organize as a corporation, according
to such laws as might be in force at the time when the actual
organization should take place, and subject to such limitations
as they might impose.   It cannot, we think, be admitted that
a statutory provision for becoming a corporation *in futuro* can
become a contract, in the sense of that clause of the Constitu-
tion of the United States which prohibits State legislation im-
pairing its obligation, until it has become vested as a right by
an actual organization under it; and then it takes effect as of
that date, and subject to such laws as may then be in force.
Such a contract, so far as it seems to assume that form, is a
provision merely that, at the time, or on the happening of the
event specified, the parties designated may become a corpora-
tion according to the laws that may then be actually in force.
The stipulation, whatever be its form, must be construed as
subject and subordinate to the paramount policy of the State,
and to the sovereign prerogative of deciding, in the mean time,
what shall constitute the essential characteristics of corporate
existence.   The State does not part with the franchise until it
passes to the organized corporation; and, when it is thus im-
parted, it must be what the government is then authorized to
grant and does actually confer.

It is immaterial that the form of the transaction is that of a
mortgage, sale, or other transfer *inter partes* of the franchise
to be a corporation.   "The real transaction, in all such cases
of transfer, sale, or conveyance," as was said by the Supreme
Court of Ohio in the case of *The State* v. *Sherman*, 22 Ohio
St. 411, 428, "in legal effect, is nothing more or less, and
nothing other, than a surrender or abandonment of the old
charter by the corporators, and a grant *de novo* of a similar
charter to the so-called transferees or purchasers. To look upon
it in any other light, and to regard the transaction as a literal
transfer or sale of the charter, is to be deceived, we think, by
a mere figure or form of speech.   The vital part of the trans-
action, and that without which it would be a nullity, is the law
under which the transfer is made.   The statute authorizing the
transfer and declaring its effect, is the grant of a new charter

couched in few words, and to take effect upon condition of the surrender or abandonment of the old charter; and the deed of transfer is to be regarded as mere evidence of the surrender or abandonment."

It is, of course, the law in force at the time the transaction is consummated and made effectual, that must be looked to as determining its validity and effect. This is the principle on which this court proceeded in deciding the case of *Railroad Co.* v. *Georgia*, 98 U. S. 359. The franchise to be a corporation remained in, and was exercised by, the old corporation, notwithstanding the mortgage of its charter, until the new corporation was formed and organized; it was then surrendered to the State, and by a new grant then made passed to the corporators of the new corporation, and was held and exercised by them under the constitutional restrictions then existing.

Our conclusions, then, are, that the exemption from taxation contained in the 28th section of the act of January 11, 1853, was intended to apply only to the Memphis and Little Rock Railroad Company as the original corporation organized under it; that it did not pass by the mortgage of its charter and works, as included in the transfer of the franchise to be a corporation, to the mortgagees or purchasers at the judicial sale; that the franchises embraced in that conveyance were limited to those which had been granted as appropriate to the construction, maintenance, operation, and use of the railroad as a public highway and the right to make profit therefrom; and that the appellant, not having become a corporate body until after the restrictions in the Constitution of 1874 took effect, was thereby incapable in law of having or enjoying the privilege of holding its property exempt from taxation.

The decree of the Supreme Court of Arkansas is accordingly
*Affirmed.*