THE STATE, for use, etc., *v.* W. E. BUTLER *et al.*

1. CORPORATIONS. *Forfeiture of charter.* Third parties cannot, under our laws, enforce the forfeiture of a charter. The State grants it and alone can take it away, but other parties in dealing with such corporations may inquire into their powers and obligations.

2. SAME. *Transfer of franchises.* A transfer of a mere charter conferring a franchise on certain persons to conduct a banking business, with which was granted immunity from other taxation than that expressly stipulated in the charter, does not convey the franchise to the transferee. A franchise is a right or privilege conferred by law, and is personal to the grantees, and cannot be transferred without the consent of the grantor.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. —— —— Sp. Ch.

SMITH & COLLIER for complainant.

TAYLOR & CARROLL and T. B. TURLEY for defendants.

DEADERICK, C. J., delivered the opinion of the court.

This is an amended bill, filed August 16, 1884, in the chancery court at Memphis, by the State for the use of the creditors of the extinct municipality of the city of Memphis, who complain, by its receiver and back-tax collector, Lawrence Lamb, against the Bank of Commerce of that city, and others.

The bill recites that, on April 26, 1879, in pursuance of the act of the Legislature of 1879, ch. 92,

a general creditors' bill against delinquent tax debtors of the city of Memphis, for the collection of back taxes, due and unpaid, had been filed, and this bill is an amendment thereto for the purpose of collecting certain back taxes from the Bank of Commerce, which are specified, and accrued from 1873 to 1878, inclusive, upon the bank building and lot, and upon $150,000, the capital stock of said bank. The tax is resisted by the bank upon the ground that it is exempt from all taxation, by virtue of the provisions of its charter, except a tax of one-half per cent. on its capital stock.

The bill alleges that an act was passed by the Legislature February 23, 1856, incorporating Chandler and associates, under the name of " Chattanooga Savings Institution," with the usual banking privileges, which are specified, except to issue notes, etc., to be used as a circulating medium, and shall pay an annual tax to the State of one-half of one per cent. on each share of capital stock, which shall be in lieu of all other taxes.

By an act of November 19, 1859, said institution was authorized to remove its office to Memphis, Tennessee, and by an act of February 12, 1866, it was authorized to change its name to that of " The Savings Bank of Memphis." And by an act of March 12, 1873, said bank was authorized to change its name to that of " Bank of Commerce," by which it has since been known and called.

The bill further alleges, that no stock was subscribed, and no organization took place, by the Chat-

tanooga Savings Institution in the city of Chattanooga; that in November, 1859, Chandler sold the *act* to W. B. Richmond, who commenced a banking business under the name of "Chattanooga Savings Institution," in Memphis, without organizing the corporation by opening books for subscription of stock, and issuing certificates of stock, but opened his bank and pursued business in buying and selling exchange and stocks, gold and silver, etc. The events of the war caused a suspension, and the business was not resumed under that name.

During the war W. B. Richmond was killed, and by his will bequeathed all his interest in the "Chattanooga Savings Institution" to his brother, Ben. Richmond; that in 1865 Ben. Richmond sold this same naked legislative act to M. J. Wicks, who procured the passage of the act of 1866, and soon after commenced the business under the name of "Savings Bank of Memphis," discounting notes, selling stock, dealing in exchange, etc., but opened no books for stock subscription, nor did he organize the bank by election of officers, etc., but the business was carried on by Wicks until 1872, when he sold the legislative act to R. A. Parker, who, with his associates, procured the passage of the act of 1873, changing the name to the "Bank of Commerce." It is alleged that these several transfers of the naked legislative acts, and carrying on the business without regular organization, were frauds upon the State and upon the treasury of the State, and operated as a forfeiture of all rights under the act.

It is also alleged that although the business author-
ized by the act of 1856 was carried on for seventeen
years in corporate names, a large part of the time
no taxes were paid to the State, county or city, as
requird by section 3 of the act of 1856: that neither
the Chattanooga Savings Institution nor Memphis Sav-
ings Bank ever paid the State the one-half per cent.
required by the third section of that act.

It is insisted by the bill that said several trans-
fers were inoperative to convey any title to the charter
of said bank, or to exempt it from taxation under
the third section of the act of incorporation; and
that the franchises therein conferred cannot be trans-
ferred or assigned; that said section 3 is repugnant
to the Constitution of 1870, and that no corporation
had been organized under the act of 1856 prior to
1870; that neither Chandler, Richmond, Wicks, nor
Parker, nor their associates, had done any acts prior
to 1870 towards organization or payment of one-half
per cent. tax to make the contract of exemption bind-
ing on the State, and by failure to organize and pay
the one-half per cent., they severally, *ipso facto*, for-
feited their right of exemption under the act of 1856;
and the Bank of Commerce, by payment of municipal
taxes on the bank's lot and building for 1873, 1874,
1875 and 1876, acknowledged its liability for taxes,
and waived all claim to exemption under the third
section of the act of 1856, which section is contrary
to the Constitutions of 1834 and 1870 and the Bill
of Rights.

It is further charged that Parker and his associates

have held themselves out as corporators and stockholders of the Bank of Commerce for eleven years as a corporation, and have exercised corporate powers for that period under the name and style of the Bank of Commerce, and claiming to do so by virtue of the act of 1873, and are estopped now from denying their corporate capacity, and this bill is maintainable against the Bank of Commerce as a corporation, to compel payment of taxes, and it is not entitled to the exemption claimed under the third section of the act of 1856.

The prayer of the bill is, that a decree be rendered against the Bank of Commerce for the taxes specified on the building and lot, and $150,000 capital stock of the bank, for back taxes for the years 1873 to 1878, inclusive, in favor of complainant, for the use of the creditors of the extinct municipality of the city of Memphis, with interest on the several amounts set out.

To this bill the Bank of Commerce demurred.

The grounds of the demurrer are in substance that the bill shows that the State has recognized from time to time the corporate existence of defendants, which is conclusive on its officers and agents; that upon this bill the court has no jurisdiction to declare the charter forfeited; that a bill for such purpose must be filed as directed by the Code in sections 3409 to 3413, inclusive; that defendants are not liable to pay taxes to the city on its capital stock; and the complainant, receiver, is not a tax collector for the purpose of collecting back taxes; that defendant

is exempt from paying more than one-half of one per cent. on each share of its capital stock, except for real estate not used exclusively for banking purposes, and for such sums has tendered the amount in its answer to the original bill; the bill shows the grounds of forfeiture therein alleged were waived by the Legislature of the State.

The special chancellor sustained the demurrer, and dismissed the bill, and the complainant has appealed.

The charter was granted February, 1856, under the Constitution of 1834, which (unlike that of 1870) contained no inhibition against granting the exemption it contained. By an act passed November 15, 1859, the "Chattanooga Savings Institution," by which name it was chartered in 1856, was authorized to move its office to Memphis, and in February, 1866, the name was changed to "The Savings Bank of Memphis," and in March, 1873, the name was again changed by the Legislature to "Bank of Commerce," which it still bears. Thus by the successive acts of 1859, 1866 and 1873, the Legislature has recognized the existence of the corporation which it chartered in 1856. The State has not sought by any proceedings instituted for that purpose to have the charter forfeited, nor, as far as disclosed in this record, has it sought to collect taxes off the corporation, except to the extent stipulated in the charter.

The bill alleges that, for certain reasons detailed, the corporation had forfeited its charter. While, for the reasons stated, it might be admitted that the State might, upon a proper proceeding for that purpose,

have had the forfeiture enforced, a third party cannot, as incidental and collateral to the main objects of this bill, have a decree nullifying the charter creating the corporation. The State granted the charter, and the State only, by the Attorney-General, can institute proceedings to have the franchises of a corporation declared forfeited for failure to comply with the provisions of the charter: 3 Tenn. Ch., 164; 3 Lea, 334; 2 Swan, 333; Code, 3409, *et seq.;* 9 Cold., 423; 12 Heis., 497. And section 1484 of the Code provides that "persons acting as a corporation will be presumed to be legally incorporated until the contrary is shown, and no such franchise shall be declared actually null or forfeited, except in a regular proceeding brought for the purpose."

While the State, by its Legislature, may change the name of a corporation, and to this extent recognize its then existence as a corporation, it does not thereby assure to it any other or different franchises than those which it is at the time of such recognition entitled to.

The bill charges that there was no organization under the charter; that the naked charter had been sold without more, from the time of the grant until in 1872, when it may be gathered from the charges of the bill that there was an organization to some extent, as it alleges there were stockholders, capital stock, and banking business thereon. But whatever rights were obtained by the "Bank of Commerce," it is alleged, were obtained by purchase of the naked charter, and so of the preceding claimants, up to the

original grantees. And if any organization was effected under the charter, in was done in 1872 or 1873.

Third persons may not, under our law, enforce the forfeiture of a charter. The State grants it, and may for sufficient cause take it away. But in dealing with such corporations, their powers and obligations may be inquired into. What is the legal effect of the several sales upon the charter originally granted, may be inquired into. The "Bank of Commerce" cannot claim exemption from taxation of its shares of stock and other property, unless it is so exempt by reason of legislative concession to it, of such immunity. If organization had taken place under the original charter, and there had been succession of corporators and change of name, this would not have impaired any right under the original charter: 13 Lea, 407.

But it is charged that Chandler, to whom and his associates the charter was granted in 1859, sold the *charter* without ever having organized, and without any subscription of stock thereunder; that his vendee bequeathed it to his brother, and he sold it to Wicks, and Wicks to Parker in 1873. There seemed to have been, under the allegations of the bill, no transfer of stock or other property, but an attempted transfer of the naked charter; the franchise conferred on certain persons to conduct a banking business, with which was granted immunity from other taxation than that expressly stipulated in the charter.

A franchise is a right or privilege conferred by law. Such a right is not transferrable: Moranetz,

sec. 536, without the consent of the grantor, and this consent is said to be in reality a grant of authority from the State to the latter association, to which the transfer is made, to exercise the franchises of the former upon the happening of the contingency, viz: the act of transfer. See also sec. 537. Such a grant confers only a personal right on the grantees. The same rules apply as to mortgages of the franchises of corporations: *Ibid,* secs. 538–9. Where franchises conferred on corporations appertain to the use of particular property, every fair presumption will be made in favor of the grant of authority by the Legislature to transfer franchises of this character in connection with the property to which they belong: *Ibid,* sec. 540. The grant of authority to a railroad company to mortgage its property and franchises would refer only to such franchises as pertain to the use of the road, and would not enable the company to mortgage the franchise of being exempt from taxation, in connection with its tangible property: *Ibid,* sec. 541, note 3, 93 U. S., 217. His Honor, the chancellor, held that such power existed in this case under the authority of the *Railroad Company* v. *Hicks,* 9 Baxt., 442.

The reasoning and argument in that case seems to give support to the conclusion arrived at in this case by the chancellor. But in that case the decision rests upon the ground that the decree of the court directed the sale of *immunities,* rights and privileges appertaining to the charters, and was made in pursuance of an act of the Legislature for the benefit of the State; and that being so, the decrees being

authorized by the Legislature, were equivalent to a legislative grant, and the purchaser took the franchise with its exemptions.

In a later case, *Ragan & Buffett* v. *Aiken,* 9 Lea, 614, this Court, Judge Cooper delivering the opinion, said : " The franchise to be a corporation is not the subject · of sale and transfer unless by some positive provisions of the statute law, pointing out the mode in which the transfer may be made." See also Moranetz, sec. 542, and cases there cited: 112 U. S., 609; 41 Ark., 436. And this is what the bill charges to have been done. If such a transfer is void, of course there can be no grant of immunity or exemption from the payment of taxes.

The chancellor's decree sustaining defendant's demurrer will be reversed and the cause remanded for answer and further proceedings. Defendant will pay the costs of this court.