## AMERICAN RAILROAD COMPANY, Plff.,

### v.

## MUNICIPALITY OF SAN JUAN et al., Dfts.

---

San Juan, Equity, No. 963.

RE TAX EXEMPTION.

Jurisdiction—Taxation—Amount.

1. Where the bill of complaint to restrain a municipality from collecting taxes is not limited to the taxes for particular years but to the right to collect taxes, the rule is that the jurisdictional amount is the value of the right, and not of an incident such as the amount of one year's tax.

American R. Co. v. San Juan.

Taxation—Assignor and Assignee.

  2. An operating company is not exempt from taxation because
  the company owing the property is exempt by virtue of an act of the
  legislature, as such an exemption is personal, and does not apply
  to assignees.

Taxation—Parties—Multiplicity of Suits.

  3. In tax matters the fundamental ground upon which the suit
  rests is the unlawfulness of the tax itself, but the bill of complaint
  must also show that the matter comes under some recognized head
  of equity jurisprudence.

Tax—License.

  4. There is a difference between a tax and a license, and where
  a license to carry on a business is based upon the amount of bus-
  iness done, it is more in the nature of a tax than a license.

Contract—Consideration—Franchise—Construction.

  5. A franchise or other grant from the sovereign must be held
  to have been made upon sufficient grounds of public policy, and it is
  not necessary to show consideration. Grants in derogation of public
  rights should be strictly construed, and the intention to exempt
  from taxation must be clearly expressed.

Taxation—Act of March 28, 1914—Adequate Remedy at Law.

  6. The procedure provided by § 14 of the Act of March 28, 1914,
  authorizing the municipalities to levy and collect annual taxes to
  be used in meeting their budgetary obligations, applies only to the
  amount of the tax, and not to its invalidity; and, this being so, a
  complaining taxpayer has no adequate remedy at law under the
  said act.

Opinion filed May 31, 1917.

## Statement of Pleadings.

This bill for injunction of certain municipalities against col-
lection of a patente or so-called license tax for municipal pur-
poses was filed November 13, 1915, and hearing has been de-
layed through absence of counsel and amendments. On June 12,
1916, the defendant the municipality of Mayaguez filed a de-

murrer and motion to dismiss for want of jurisdiction, and at the same time there was heard plaintiff's application for preliminary injunction. The bill was rewritten and resubmitted November 16. On February 12, 1917, the Compañia de los Ferrocarriles de Puerto Rico was admitted as coplaintiff, defendant municipality of Mayaguez consenting thereto. On February 26 an order pro confesso was entered against defendants the municipalities of Guanica and Ponce. Exhaustive briefs have been filed and the case now comes on for decision.

The motion and demurrer admit the allegations of the bill, except that the motion is supported by an affidavit that the so-called license tax at Mayaguez is $600. The bill set up that the plaintiff is a corporation incorporated in New York in 1902, and on the 22d day of March of that year a contract was entered into between the plaintiff and the Compañia de los Ferrocarriles de Puerto Rico, owning the railroad properties concerned in this litigation, whereby the plaintiff was to operate the property and turn over the net proceeds after deducting certain compensation. That the property in question consisted of a railroad extending from San Juan through Mayaguez Ponce, and the other municipalities made defendants. That, while the property originated in Spanish times and was partly constructed then, the railroad, with its present extensions, was put and continued in operation under a certain ordinance granted by the Executive Council of Porto Rico October 20, 1901, giving to the Compañia de los Ferrocarriles de Puerto Rico and its successors the right to extend its lines between certain points. That in this ordinance there was in § 5 a provision that "said grantee shall be exempt from all insular, municipal, or local taxation of every name and nature for a period of twenty-five years from the date of the ac-

ceptance by it of this grant," with a proviso that the Legislative Assembly of Porto Rico shall authorize this exemption. That the said compañia duly accepted the ordinance, and on February 4, 1902, the said Legislative Assembly passed an act whereby in § 1 said compañia, its successors, and assigns "are hereby exempt from all insular, municipal, or local taxation of every name and nature for a period of twenty-five years from the date of the acceptance by it" of the above ordinance, "said exemption from taxation to include any taxes heretofore levied and now due and to cover the railroad lines and property heretofore built and acquired by it, as well as the railway lines and property hereafter to be built and acquired by it." That plaintiff American Railroad Company has since its contract of March 22, 1902, been operating the property thereunder, with certain amendments in 1906 not at present material, the compensation to it being 5 per cent of the gross earnings. That on March 28, 1914, said Legislative Assembly passed an act "authorizing the municipalities . . . to levy and collect annual taxes to be used in meeting their budgetary expenses" and among the industries subject to tax are railroads in accordance with group B of § 2. That under § 3 it is provided that there shall be collected from railroads doing business in the island the sum of $1 for each thousand dollars of the volume of business transacted up to a hundred thousand dollars, and 50 cents per thousand dollars for business in excess of said sum. That § 4 provides "for the purposes of this act the volume of business shall be understood to be the gross receipts in any municipality of the business or industry from its business transactions in Porto Rico, its gain or profit not alone to be considered. . . . The total value of the freight and passenger charges in each office established in each municipality." That

each and all of the defendants, being municipalities through which the railroad passes, are attempting to enforce the act or harass plaintiff "with numerous, frequent, and vexatious demands for it to comply with said law by making declarations of the volume of business. . . . or threatening to institute proceedings against plaintiff for the collection of fines and penalties as in said act provided and as provided by ordinances adopted by the various defendant municipalities." That plaintiff has declined to comply with the law because it is not applicable to plaintiff, the "total value of the freight and passenger charges" belonging to the said compañia and exempt under the ordinance of the Executive Council above set out, and plaintiff itself acts only upon commission which is not comprehended in the law. Plaintiff alleges that, unless injunction is granted, plaintiff will be subjected to a multiplicity of suits and be compelled to pay large sums of money, greatly in excess of $1,000. Prayer follows for injunction, preliminary and final.

*Mr. F. H. Dexter* for plaintiff.

*Mr. Leopoldo Feliu* for defendant Municipality Mayaguez.

HAMILTON, Judge, delivered the following opinion:

1. The first question that should be considered relates to the motion to dismiss because of alleged lack of jurisdiction on the part of the court. The point is that the patente or tax in question is not shown by the bill to amount to $1,000, while on the other hand the affidavit of the mayor of Mayaguez is to the effect

that the amount is about $600. In support of this, attention is called to Walter v. Northeastern R. Co. 147 U. S. 370, 37 L. ed. 206, 13 Sup. Ct. Rep. 348, where it is declared that where two or more defendants are sued by the same plaintiff in one suit the test of jurisdiction is the joint or several character of the liability to the plaintiff; the theory being that, although the proceeding is in form one suit, its legal effect is the same as though separate suits had been begun. . The suit was to enjoin execution for specific amounts. In Northern P. R. Co. v. Walker, 148 U. S. 391, 37 L. ed. 494, 13 Sup. Ct. Rep. 650, based on the Walter Case, it was not shown that the amount of assessments and taxes levied in either or all of the counties exceeded the sum of $2,-000; and, even if this had been the aggregate, the defendants could not have been joined in a single suit for the purpose of sustaining the jurisdiction. In Citizens' Bank v. Cannon, 164 U. S. 319, 41 L. ed. 451, 17 Sup. Ct. Rep. 89, it is declared that jurisdiction cannot be conferred in one bill against distinct tax claims no one of which reaches the jurisdictional amount, and it will not be presumed taxes for successive years are the same in amount. The Walker Case was not a suit to exempt property from taxation permanently, the purpose of the bill being to restrain assessors and collectors from collecting taxes for specific years; and, from the nature of the case, it was impossible for a court to foresee what taxes might be assessed in future. The bill in this case, however, is not limited to any particular years. The prayer is that the defendants be restrained from proceeding under the Act of 1914 to collect annual taxes. The rule in such cases is that the jurisdictional amount in taxation matters is the value of the right, not an incident, such as the amount of one years' tax. Berryman v. Whitman College,

222 U. S. 334, 56 L. ed. 225, 32 Sup. Ct. Rep. 147; New Orleans v. Citizens Bank, 167 U. S. 371, 42 L. ed. 202, 17 Sup. Ct. Rep. 905; Deposit Bank v. Frankfort, 191 U. S. 499, 48 L. ed. 276, 24 Sup. Ct. Rep. 154. There has been a similar ruling where the question of a right to office is concerned. Clayton v. Utah, 132 U. S. 632, 33 L. ed. 455, 10 Sup. Ct. Rep. 190. It follows that the motion to dismiss for want of jurisdiction must be denied, and a demurrer on the same point is also overruled.

2. The demurrer sets up in the first place that the plaintiff has no interest in the tax complained of. It seems that the Compañia de los Ferrocarriles de Puerto Rico owns the property and receives the net income, the original plaintiff, American Railroad Company, being merely an operating company. It is true that such an exemption is personal, and does not apply to assignees. Picard v. East Tennessee V. & G. R. Co. 130 U. S. 637, 32 L. ed. 1051, 9 Sup. Ct. Rep. 640; Memphis & L. R. R. Co. v. Railroad Comrs. (Memphis & L. R. R. Co. v. Berry) 112 U. S. 609, 28 L. ed. 837, 5 Sup. Ct. Rep. 299. But this principle is immaterial, inasmuch as both the operating and the property-owning companies are now made parties plaintiff. At all events, whatever the merits of the question as against the original plaintiff alone, the agreed amendment making the Compañia de los Ferrocarriles de Puerto Rico a coplaintiff removes the objection. Between them the two plaintiffs represent the railroad property in its corpus and income, and between them they are interested in the so-called patente tax, if there is anybody that can be interested in the matter at all.

3. The question is raised whether the bill is not multifarious in joining as defendants about two dozen municipalities, each of which, under the law and in point of fact, levies for itself the

IX. Porto Rico.—34.

tax complained of. It is perfectly true that each defendant pro-
poses to proceed on its own account, but each one proposes so
to proceed under the same legal claim, that is to say, the Act of
1914. The result is that the plaintiffs have a community of in-
terest or common right. Simkins, Fed. Eq. Suit, 29. Wherever
there is a common point of interest between complainant and
several defendants separately liable, the remedy at law is not as
efficient as in equity. There is no hard and fast rule as to mul-
tiplicity of suits, and each case must be decided upon substantial
convenience. Simkins, Fed. Eq. Suit, 30.

The case at bar is perhaps one where a few defendants may be
made parties as representatives of a class claiming the same title
or right, but in point of fact all members of the class are made
parties and only one objects. United States v. Bitter Root De-
velopment Co. 200 U. S. 451, 479, 50 L. ed. 550, 563, 26 Sup.
Ct. Rep. 318. The facts showing the danger and multiplicity
of suits must be alleged. Boisé Artesian Hot & Cold Water Co.
v. Boisé City, 213 U. S. 276, 53 L. ed. 796, 29 Sup. Ct. Rep.
426. In tax matters the fundamental ground upon which the
suit rests is the unlawfulness of the tax complained of, but this
is not in itself sufficient. Where the illegality of the tax is es-
tablished, there must be added some recognized head of equity
jurisdiction, such as that the collection of the tax will entail a
multiplicity of suits, cause irreparable injury, or throw a cloud
upon the title.  Dows v. Chicago, 11 Wall. 108, 20 L. ed. 65;
Pacific Exp. Co. v. Seibert, 142 U. S. 339, 348, 35 L. ed. 1035,
1038, 3 Inters. Com. Rep. 810, 12 Sup. Ct. Rep. 250; Shelton
v. Platt, 139 U. S. 591, 35 L. ed. 273, 11 Sup. Ct. Rep. 646.

The court is of the opinion that, under the facts alleged in the
bill, there is involved the question of a multiplicity of suits,

which the plaintiff is entitled to avoid, provided the tax itself is shown to be invalid.

4. The demurrer raises the further ground that the plaintiff is not entitled to the relief prayed. In that form the demurrer would be general, and need not be considered. The parties, however, have argued this as amounting to an attack upon the alleged exemption from taxes, and this point will therefore be taken up.

Does the contribution which it is sought to impose amount to a tax? There is a distinction between a tax and a license. The former is a contribution exacted by the public authorities for public purposes from property which enjoys public protection. A license on the other hand is an imposition exacted for the right to carry on a business, which may or may not require the use of property otherwise taxed as above. The two are entirely distinct. 37 Cyc. 711. A business may be licensed, and not taxed; or it may be taxed, and not licensed. Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 654. A license is a right granted by public authority to carry on a business which could not be carried on without such license. 21 Am. & Eng. Enc. Law, 773.

The so-called tax is laid upon the physical property as such, but is $1 per thousand dollars of the volume of business transacted, being the gross receipts in any municipality, the gain or profit not being considered alone. The contribution levied, therefore, is upon the gross profits or proceeds of the business. The object of holding any property is the use or income thereof, and it would be difficult to say that a tax upon the gross produce was not a direct tax upon the property itself. Indeed it has been held in the Income Tax Cases that, under the Federal Constitution a tax upon income from land is a direct tax upon the land it-

self.  Pollock v. Farmers' Loan & T. Co. 157 U. S. 429, 39 L. ed. 759, 15 Sup. Ct. Rep. 673.  So, of income from personalty. Same Case, 158 U. S. 601, 39 L. ed. 1108, 15 Sup. Ct. Rep. 912.

A tax is imposed chiefly for revenue, and a substantial imposition based upon the gross amount of business done, a tenth of 1 per cent, and therefore varying with the size and importance of the municipality, has certainly more elements of a tax than it has of a license.  It is a direct contribution levied upon the income of the business in question after it is earned, and not a prerequisite to beginning any business.  The patente, therefore, as presented in the pleadings, must be considered as more in the nature of a tax than of a license.

5. The argument raises questions as to incidents connected with the exemption claimed, but it would seem that all conditions have been complied with; for instance, acceptance is required and the bill alleges acceptance; the legislature must approve, and the bill alleges that the legislature passed an act of approval.  The argument that there must be some consideration for the grant of exemption cannot be sustained.  A franchise or other grant from the sovereign must be held to have been made upon sufficient grounds of public policy, and must be protected the same as any other contract.  Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. ed. 629 (Marshall).  *Secus* as to a municipal corporation.  Wells v. Savannah, 181 U. S. 531, 45 L. ed. 986, 21 Sup. Ct. Rep. 697.

This principle has been modified to the extent that grants in derogation of public rights will be strictly construed.  Charles River Bridge Case, 11 Pet. 420, 9 L. ed. 773; Stein v. Bienville Water Supply Co. 141 U. S. 67, 35 L. ed. 622, 11 Sup. Ct. Rep.

892. A mere bounty is revocable. Welch v. Cook, 97 U. S. 541, 24 L. ed. 1112. Thus, the tax power is never presumed to be relinquished, and the intention to relinquish must be clearly expressed. Delaware R. Tax Case, 18 Wall. 206, 21 L. ed. 888; Providence Bank v. Billings, 4 Pet. 514, 7 L. ed. 939 (Marshall); Philadelphia, W. & B. R. Co. v. Maryland, 10 How. 376, 13 L. ed. 461 (Taney); Southwestern R. Co. v. Wright, 116 U. S. 231, 29 L. ed. 626, 6 Sup. Ct. Rep 375; Vicksburg, S. & P. R. Co. v. Dennis, 116 U. S. 665, 29 L. ed. 770, 6 Sup. Ct. Rep. 625.

To meet this question it is generally provided in modern constitutions that the grant of corporate franchises is amendable, and the same principle is applied as to Porto Rico. Section 32 of the Foraker Organic Act of April 12, 1900, provides that "all grants of franchises, rights, and privileges or concessions of a public or quasi public nature shall be made by the Executive Council, with the approval of the governor, and all franchises granted in Porto Rico shall be reported to Congress, which hereby reserves the power to annul or modify the same." [31 Stat. at L. 84, chap. 191, Comp. Stat. 1916, § 3781]. There was no such annulment or modification by Congress; but a joint resolution of May 1, 1900 (31 Stat. at L. 715, Comp. Stat. 1916, § 3783), provides in § 3, "that all franchises, privileges or concessions granted under § 32 of said act shall provide that the same shall be subject to amendment, alteration, or repeal. . . . Corporations not organized in Porto Rico, and doing business therein, shall be bound by the provisions of this section so far as they are applicable." It is not clear from the bill of complaint whether this provision or amendment was or not inserted in the Porto Rico Exemption Act of February 4, 1902, now relied on

by the railroad. Repeal by implication is not favored. South Carolina v. Stoll, 17 Wall. 425, 431, 21 L. ed. 650, 654. There has not been any such repeal in the case at bar, unless it arises from the Act of March 28, 1914, permitting municipalities to levy annual taxes. This is not necessarily a revocation of the exemption, because there might well be other railroads on the Island not exempted, and to which the Act of 1914 would apply without affecting at all the exemption now set up by the plaintiffs. Louisville Water Co. v. Clark, 143 U. S. 1, 36 L. ed. 55, 12 Sup. Ct. Rep. 346, is not inconsistent with this view. In that case there was an exemption from "taxation of whatever character, state, municipal, or special," but with a general statute allowing amendment, and a subsequent statute imposes taxes upon all property in the state and expressly repeals all inconsistent laws, general or special. Exemption was a law, either general or special in nature, and therefore was held to be repealed by the new statute. As presented in the pleadings, therefore, while the exemption law may be revocable under the joint resolution of Congress, it is not satisfactorily shown that there has been any such revocation, and it must be held to be in force.

6. It is contended that the railroad has an adequate remedy at law in that the local law provides a method of protest and hearing before a committee of the local municipal council. Act of Porto Rico No. 26 approved March 28, 1914, § 13. In § 14 it is declared any taxpayer deeming himself prejudiced by the decision of the municipal council shall pay the amount of the tax as fixed, but may apply for review to any court of competent jurisdiction within thirty days, with provision for repayment if he succeeds. In Indiana Mfg. Co. v. Koehne, 188 U. S. 681, 47 L. ed. 651, 23 Sup. Ct. Rep. 452, it was held that complainant

could set forth its claim to exemption for its patent in the local tribunal, and, in case of refusal, go ultimately to the Supreme Court of the United States. The Porto Rico statute, however, is not of this character, inasmuch as it provides only for a trial by this committee on the protest as to the amount of the tax. There is no provision made for trial of the question of invalidity of the tax itself, which would be necessary in case of claim of exemption. It cannot be said, therefore, that the plaintiff has an adequate remedy at law.

It follows that the demurrer must be overruled.

The cause coming on then for application for preliminary injunction and on the pleadings heretofore filed, there appearing to be probability that the plaintiff will succeed in its contentions, the practice of this court is to grant the injunction, subject of course to dissolution in case the plaintiff does not make out its case. This course will be pursued.

It is so ordered.