THOMAS G. WATKINS, Trustee. v. J. H. SEDBERRY, et al.

Middle Section.    April 10, 1928.

Petition for Certiorari denied by Supreme Court, July 14, 1928.

J. C. Eggleston, of Franklin, and Norman Farrell, of Nashville, for appellants, Sedberry.

Jordan Stokes, Jr., and Joseph R. West, of Nashville, and R. H. Crockett, of Franklin, for appellees, L. W. Buford, et al.

CROWNOVER, J. This cause is heard on appeal from the decree of the Chancellor allowing L. W. Buford and Newton Cannon, Jr., $2000 fees for their services as receivers, and $1350 fees for the services of their solicitors, in administering the estate of J. H. Sedberry, bankrupt.

The cause was by agreement tried by the Chancellor on oral evidence, with the result above stated. The defendants Sedberry appealed and have assigned errors, in which they insist that the amounts allowed are excessive. They insist that the Chancellor should have allowed a total of only $2100 compensation to the receivers and their solicitors for the services rendered.

The facts necessary to be stated are that the defendant J. H. Sedberry in 1917 filed a voluntary petition in bankruptcy in the United States District Court at Nashville, in which he listed indebtedness amounting to about $18,000 to unsecured creditors, and no assets.

Thomas G. Watkins, of Nashville, was elected trustee, and filed the original bill in this cause against Mrs. Z. C. Sedberry, her children and others, to reach certain personalty, and also a valuable farm in Williamson county previously conveyed to Mrs. Sedberry in

trust for the bankrupt and their children, said assets were valued at about $100,000. The Chancellor decreed in favor of the trustee in bankruptcy, and held that the said land and personalty were the assets of the bankrupt's estate, and as such should be recovered by the trustee Watkins. The defendants did not appeal but agreed with said trustee to mortgage the farm for enough money to pay the bankrupt's debts in full so as to prevent a sale of said property.

It was later learned that the trustee in bankruptcy had entered into an agreement with his attorneys, Jordan Stokes, Jr., R. H. Crockett and Joseph R. West, in which it was agreed that said attorneys should receive one-half of all of said property recovered, for their fees, and under said decree they contended that they were entitled to $49,000; whereupon the defendants filed a petition in bankruptcy court asking that court to fix the fees, and after much litigation through all the courts, the United States Supreme Court held that they were entitled to $7500 fees for representing the trustee, on a quantum meruit basis. See Watkins v. Sedberry, 261 U. S., 571, 67 L. Ed., 802.

After the original bill in this cause was filed on October 27, 1917, the court appointed the appellees Buford and Cannon receivers, who took charge of said farm of 337 acres, the growing crops, farming implements, live stock and other personalty, and remained in possession of the same for about six years, pending the litigation and final settlement.

The receivers executed a $25,000 receivers' bond, and they rented the farm to a tenant, Spencer Gary, who seems to have been an efficient tenant, for one-half of the crops grown, and he cultivated the land under the receivers' direction each year for six years. He raised good crops and improved the farm and buildings, and made some profits for the estate during his term.

The receivers had experience raising turnip seed and millet and in growing and marketing farm crops and products. They grew some good turnip seed and millet crops, from which the estate derived good profits. They sowed clover and millet and planted the farm in different crops, and had the turnip seed and millet threshed and cared for. They paid the insurance and taxes, repaired and built fences and placed a new roof on the barn. They kept books and have filed a detailed report, giving inventories of the crops growing and marketed, which report shows that they had charge of a farm worth $60,000 or $70,000 and had received cash from the sale of crops, etc., $22,039.92, had personalty on hand valued at $5,000, and had recovered a judgment of $13,727.02 against D. M. Ferry & Company for turnip seed, making a total of $40,767.94 of personalty.

It appears that J. H. Sedberry before filing his petition in bankruptcy had entered into a contract with D. M. Ferry & Company

by which he was to plant and raise turnip seed for that company on his said farm, at thirteen and one-half cents per pound, to be delivered in 1918, which was after he was adjudicated a bankrupt, and upon advice of their attorneys the trustee and the receivers refused to comply with the contract and to deliver the crop of turnip seed to D. M. Ferry & Company at the price of thirteen and one-half cents per pound, as the seed was worth forty cents per pound in the market. Litigation ensued and the courts decreed that it was not incumbent on them to comply with the bankrupt's contract, hence the suit was decided against D. M. Ferry & Company, but that company later filed its .claim for damages against the bankrupt estate for the full amount of the value of the turnip seed at forty cents per pound, making a total of $11,070.18; hence as there were enough assets to pay all the claims in full, it resulted the bankrupt's estate gained nothing by its litigation with D. M. Ferry & Company; but had the assets been insufficient to pay the indebtedness then the creditors of the estate would have gained by the litigation.

After taking into consideration the record and the whole situation we concur in the opinion of the Chancellor and think that the assignments of error should be overruled.

The receivers had the responsibility of the management of a large, valuable farm and by their knowledge and experience they were able to make profits for the estate. They represented the court and not any particular litigant. The trustee in bankruptcy did not have charge of the farm or the personalty, and was not burdened with the responsibility of caring for it. This duty devolved upon the receivers; hence we think that the allowance of $2000 for their services is reasonable. See 23 R. C. L., pages 7-8, 122-123.

"Considerations which should control in fixing compensation (of receivers) are the value of the property in controversy; the particular benefit derived from the receiver's efforts and attention, time, labor and skill required, and experience in the proper performance of the duties imposed; their fair value measured by common business standards; and the degree of integrity and dispatch with which the work of the receivership is conducted."
See 23 R. C. L., sec. 147, page 138; High on Receivers (3 Ed.), sec. 783, page 718.

We likewise concur in the Chancellor's finding as to the receivers' solicitors fees, and think that $1350 is reasonable.

"The general rule is that where a receiver is charged with duties and the performance of a particular trust requiring the benefit of counsel to guide and to assist him, he is entitled to the benefit of such assistance and he will be allowed out of the funds reasonable and proper fees in his behalf; and although there is no specific original order giving the receiver authority

to employ counsel, counsel fees are nevertheless within the just allowance that may be made by the court. The receiver cannot, without previous authority from the court, make any binding contract for the compensation of his attorney, since it is ultimately the function of the court to determine both the necessity for the counsel and the compensation to be allowed therefor.'' 34 Cyc., 290; State ex rel. v. Butler, 83 Tenn., 112: 23 R. C. L., sec. 148, pages 138-139.

The proof shows that the receivers conferred with their solicitors Jordan Stokes, Jr., R. H. Crockett and Joseph R. West when they were appointed, and had them to define their rights, duties and powers. They conferred as often as occasion demanded about all the affairs as they arose, such as buying the harvest machines, fence repairs, putting roofing on barn, corn shipments, the personal property and the exemptions, and all litigations with D. M. Ferry & Company, the Craig Lumber Company and many other matters, as one witness stated, almost daily, as the bankrupt Sedberry was unfriendly to receivers and they had to be careful to stay within their rights; hence we think that $1350 was reasonable for the services of the three reputable lawyers during the six years in all these matters.

It results that the assignment of errors is overruled, and the decree of the Chancellor is affirmed. A decree will be entered here for the respective amounts in favor of said appellees, but it appearing to the court that $2100 has been, by agreement paid on said decrees, just after the rendition of the decrees in the lower court, hence, the parties will be entitled to interest on the remainder from February 16, 1925, and the same will be added to the decrees when entered in this case.

It appearing that the Clerk and Master has money in his hands probably sufficient to pay the balance on these decrees, the cause will be remanded to the chancery court of Williamson county for the purpose of the Chancellor entering such orders as will be necessary for the direction of the Clerk and Master to collect in the funds and to pay the balance of said decrees.

In the event there is not sufficient funds in the hands of the Clerk and Master with which to pay said decrees (less the $2100) executions may issue for the balance.

The cost that accrued in the lower court, together with the cost of the appeal is adjudged against the appellants and the surety on their appeal bond, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.