## PEOPLE *ex rel.* SCHURZ v. COOK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 139. Argued March 15, 1893. — Decided April 3, 1893.

The authority conferred by the act of the legislature of New York of May 11, 1874, c. 430, p. 547, as amended by the act of June 2, 1876, c. 446, p. 480, upon purchasers at a foreclosure sale of a railroad, to organize a corporation to receive and hold the purchased property, creates no contract with the State.

The imposition, under the provisions of the act of the legislature of New York of April 16, 1886, c. 143, of a tax upon a corporation so organized after the passage of that act by purchasers who purchased at a foreclosure sale made before its passage, for the privilege of becoming a corporation, violates no contract of the State, and is no violation of the Constitution of the United States.

THIS writ of error was brought to review a judgment of the Supreme Court of the State of New York, adopting and entering a decision of the Court of Appeals of said State in pursuance of a remittitur therefrom, on the ground that it gave effect to and enforced a law of the State, which, in violation of the Constitution of the United States, impairs the obligation of a contract. Whether there was a contract and whether

its obligation had been impaired, as claimed by plaintiffs in error, were questions which arose and were to be determined upon the following state of facts: Several railroad corporations properly organized under the laws of New York and Pennsylvania, after duly executing mortgages upon their respective properties and franchises to secure the payment of bonds lawfully issued by them, were consolidated, under legislative authority from those States, into one company, which was incorporated February 14, 1883, under the name of the Buffalo, New York and Philadelphia Railroad Company. This new company, in pursuance of proper authority, also executed a mortgage upon its properties and franchises to secure the payment of bonds issued by it. Default was made in the payment of the bonds issued under and secured by each of these various mortgages, and foreclosure proceedings were instituted thereon, and the mortgages duly foreclosed, and the entire properties and franchises of all the companies, constituent and consolidated, were regularly sold under such foreclosure proceedings and bid in by the plaintiffs in error as the representatives of the security holders, in pursuance of a scheme of reorganization previously agreed upon. The properties and franchises so sold and purchased were duly conveyed to the purchasers September 28, 1887, who thereupon adopted and executed articles of association under and in conformity with the provisions of the reorganization acts of the State, (c. 430 of the Laws of 1874, as amended by c. 446 of the Laws of 1876,) and having prepared a certificate of incorporation, as provided by said acts, setting forth, among other things not material to be noticed, that they had associated themselves together as a corporation to be known as the Western New York and Pennsylvania Railway Company, with a maximum capital stock of $15,000,000, divided into 150,000 shares, they presented said certificate to Frederick Cook, secretary of State, with the request to file the same in his office, such filing being required before the parties forming the organization could become a body corporate. They tendered the secretary of State, at the time of applying to have the certificate filed, the sum of $45 as the proper amount

of fees for recording the same. The secretary refused to permit it to be filed, basing his refusal upon the provision of an act of the legislature known as chapter 143 of the Laws of 1886, which provided that any corporation incorporated under any general or special law of the State, having capital stock divided into shares, should pay to the state treasurer for the use of the State a tax of one-eighth of one per centum upon the amount of capital stock which the corporation was authorized to have. The act further provided that "the said tax shall be due and payable upon the incorporation of said corporation or upon the increase of the capital stock thereof; and no such corporation shall have or exercise any corporate power until the said tax shall have been paid. And the secretary of State and any county clerk shall not file any certificate of incorporation or association until he is satisfied that the said tax has been paid to the state treasurer. And no such company incorporated by any special act of the legislature shall go into operation or exercise any corporate powers or privileges until said tax has been paid as aforesaid." This act took effect immediately upon its passage. When the plaintiffs in error presented their certificate of incorporation to the secretary of State for filing, the tax imposed by this act, amounting to $18,000, had not been paid or tendered to the state treasurer, and for this reason the secretary refused to file the certificate. Thereupon the plaintiffs in error applied to the Supreme Court of the State of New York, at special term, for a peremptory writ of mandamus, to compel the secretary of State to file said certificate. The petition set out in detail the foregoing proceedings. In response to the order to show cause why the writ should not be granted, the secretary of State made return, stating, among other objections not material to this case, that the said Western New York and Pennsylvania Railway Company of New York sought to be incorporated as a corporation, had neglected and refused to pay the incorporation tax imposed by the law of 1886, and that he could not be required to file the certificate until said tax had been paid. The special term denied the motion for a mandamus. From this order the relators appealed to the general term of

the Supreme Court, which affirmed the action of the special term. 47 Hun, 467. The relators then appealed from the decision of the general term to the Court of Appeals, which affirmed the order of the former, 110 N. Y. 443, and remitted the cause to the Supreme Court of the State, where judgment was entered in conformity with the decision of the Court of Appeals.

*Mr. George Zabriskie* for plaintiffs in error.

The provisions of the Railroad Law of New York, enabling the incorporated purchasers of railroads and franchises sold under foreclosure to possess, exercise and enjoy the property purchased, formed part of the mortgagor company's charter and constituted a contract between the State and the mortgagor company for the benefit of the bondholders and ultimately for the benefit of the purchasers. *Fletcher* v. *Peck*, 6 Cranch, 87; *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 547; *Greenwood* v. *Freight Company*, 105 U. S. 13, 20; *New Orleans Gas Company* v. *Louisiana Light Company*, 115 U. S. 650, 660; *Brooklyn Park Commissioners* v. *Armstrong*, 45 N. Y. 234.

The franchises which the corporation mortgages, and which the State stipulates to confer upon the incorporated purchasers, are rights or privileges which are essential to the operations of the corporation, and without which its road or works would be of little value, such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines and the like. They are positive rights and privileges without the possession of which the road of the company could not be successfully worked. *Morgan* v. *Louisiana*, 93 U. S. 217, 223.

When there is a judicial sale under a mortgage authorized by the State, covering franchises, those franchises which are necessary for the use and enjoyment of the road pass, under the legislation of New York, to the purchasers in the sense indicated in *Memphis Railroad Co.* v. *Commissioners*, 112 U. S. 609; and purchasers under a foreclosure sale of mort-

gaged property derive their title (through the State, in the case of franchises) from the mortgagee. The foreclosure cuts off the equity remaining in the mortgagor, and leaves the title conveyed by the mortgage absolute. *Packer* v. *Rochester & Syracuse Railroad*, 17 N. Y. 283, 287.

But the franchises being derived originally from the State, are transferable from the mortgagee only to the extent, and in the manner, and to the persons prescribed by the State. The State has given express authority, and its own contract, to transfer them to the mortgagee; and it is needless to consider whether or not this grant would in the absence of further express language imply a further agreement, *quasi ex contractu*, that if the mortgagee were obliged to resort to his security for the collection of his debt, and realize his security in the usual way, by foreclosure of the mortgagor's equity, and a sale, passing title to the purchasers, the State would also grant to the purchasers the same franchises which had been transferred to the mortgagee, and sold by judicial process; because there is no room for an implied covenant, since the State has entered into an express covenant on this point by those provisions of the charter which relate to mortgaging and the rights acquired by purchasers under foreclosure; by which the State agrees to grant to the purchasers, when incorporated, the same franchises and other rights that belonged to the corporation which last owned the railroad.

These franchises and other rights, however, do not comprise the power to act in a corporate capacity, which does not belong to the corporation, but to the corporators. *Southern Pacific Railroad* v. *Orton*, 32 Fed. Rep. 457; *Memphis &c. Railroad* v. *Commissioners*, 112 U. S. 609; *People* v. *Coney Island Railway*, 89 N. Y. 75. But the State does exact that the purchasers shall become a corporation; and it is only to such corporation, and not to the purchasers themselves, that the State agrees to grant the franchises.

When the mortgages, under which the plaintiffs in error claim title, were made and the bonds were issued under them, all the existing legislation of the State as to the title which passed, under the mortgages, to the mortgagees, and their

right to transfer it to the purchasers by foreclosure, and the right of the incorporated purchasers to take, exercise and enjoy the mortgaged franchises, as well as the other mortgaged property, constituted part of the contract.

The contract of the State of New York was not to grant to natural persons the railroad franchises covered by the mortgages and sold under judicial process of foreclosure, but only to grant those franchises to a corporation organized by, and composed of, the purchasers and their associates or assigns.

The distinction between acquiring title to railroad franchises and obtaining the power to exercise and enjoy them in operating the railroad is established by judicial decisions of the courts of New York. *People* v. *Railroad Co.*, 89 N. Y. 75; *Fanning* v. *Osborne*, 102 N. Y. 441.

The policy of the State of New York, as gathered from its legislation, is to confer railroad franchises only upon railroad corporations and not upon individuals. It results from all this that grants of corporate powers by the State of New York for the operation of railroads are conferred by the State only upon corporations; that there is no law authorizing natural persons to exercise the corporate franchises which they may purchase under foreclosure; that the State has always deemed it necessary to make provision either by special act (prior to 1854) or by general law (since 1854) whereby the purchasers might, by turning themselves into a corporation, enable themselves to use and exercise the franchises of which they had become the owners; and that these provisions for incorporation of the purchasers are inseparable from the terms of the contract of the State with the corporation conferring power to make mortgages upon railroad companies.

The contract of the State being plainly to confer the franchises on the corporation formed by the purchasers, there is no implication of a grant to confer them upon the purchasers individually. The obligation is construed strictly. *Auburn & Cato Plank-road Co.* v. *Douglass*, 9 N. Y. 444; *United States* v. *Arredondo*, 6 Pet. 691, 738; *Rice* v. *Railroad Co.*, 1 Black, 358, 380.

The State having agreed unconditionally to give to the

incorporated purchasers the right to use for the operation of the railroad the corporate franchises acquired under the mortgages, and to confer on them the corporate capacity necessary for that purpose, violates its contract when either it refuses absolutely to give the franchises or the corporate capacity or imposes any conditions upon giving them; and its refusal or its imposition of conditions is not justified by any power reserved to the State either by the Constitution of the State or by the charter or acts of incorporation of the railroad companies.

The general railroad law of New York, c. 140, Laws of 1850, § 48, provided that "the legislature may at any time annul or dissolve any incorporation formed under this act, but such dissolution shall not take away or impair any remedy given against such corporation, its stockholders or officers for any liability which shall have been previously incurred." The effect of these reservations is to empower the legislature to take the life of the corporation; but it does not authorize the legislature to interfere with the property of the corporation or to impair the obligation of any contract; and there is a contract, within the meaning of the rule, whenever a mortgage covering corporate franchises or other property is made and bonds are issued under it. *People* v. *O'Brien*, 111 N. Y. 1.

The power of the State to tax does not authorize the imposition of the tax provided in the act of 1886 upon the plaintiffs in error. States cannot impair the obligation of contracts by means of taxation. The tax in question is, in reality, the price exacted by the State for the grant of the power to be a corporation, which it had previously contracted to grant without price. It is not assessed upon the value of the property, but upon the nominal amount of capital stock without reference to its actual value. *Bank of Commerce* v. *New York*, 2 Black, 620, 629. The payment in question is quite different in principle from the annual tax. It is made once for all, and not from year to year. It is payable only for the initial grant of corporate capacity to a group of individuals, and of corporate franchises to such corporation, and not for the privilege of exercising franchises after they have been acquired by the

corporation. *State* v. *Parker*, 32 N. J. Law, (3 Vroom,) 426; *Chilvers* v. *People*, 11 Michigan, 43; *People* v. *Thurber*, 13 Illinois, 554.

The Court of Appeals felt themselves controlled by the authority of *Memphis &c. Railroad Co.* v. *Commissioners*, 112 U. S. 609; but that case does not decide the question in this suit.

However true the observations in that opinion are, with reference to railroads in Arkansas or elsewhere, they are not applicable to railroads in New York. In that State "the right [to become incorporated] conferred under the general law, is in the nature of a contract." *Abbott* v. *Johnstown &c. Railroad*, 80 N. Y. 27, 30.

*Mr. S. W. Rosendale*, Attorney General of the State of New York, for defendant in error.

MR. JUSTICE JACKSON, after stating the case, delivered the opinion of the court.

The present writ of error is prosecuted to review and reverse this judgment, on the ground that the decision of the Court of Appeals, in enforcing the provisions of the law of 1886 against the relators, plaintiffs in error, and requiring of them the payment of one-eighth of one per centum upon the amount of the capital stock of the company sought to be incorporated, as a condition precedent to the filing of the certificate and becoming a body politic and corporate under the name of the Western New York and Pennsylvania Railway Company of New York, impaired the obligation of a contract made and entered into between the State and the several corporations and mortgagees thereof, to whose rights, properties and franchises the plaintiffs in error, under the foreclosure proceedings aforesaid, had succeeded. Their claim is that, under and by virtue of the provisions of the laws of 1874, as amended in 1876, embodying the alleged contract with the State, they are entitled to be incorporated, and cannot lawfully be required to pay any tax to the State before becoming a corporation,

and acquiring the right to exercise corporate functions and franchises. The act of 1874, as amended in 1876, is by its caption entitled "An act to facilitate the reorganization of railroads sold under mortgage, and to *provide for the formation of new companies in such cases.*" The provisions of the statute, so far as material to this case, are the following:

"In case the railroad and property connected therewith, and the rights, privileges and franchises of any corporation, except a street railroad company, created under the general railroad law of this State, or existing under any special or general act or acts of the legislature thereof, shall be sold under or pursuant to the judgment or decree of any court of competent jurisdiction made or given to execute the provisions [or] enforce the lien of any deed or deeds of trust or mortgage theretofore executed by any such company, the purchasers of such railroad property and franchises, and such persons as they may associate with themselves, their grantees or assignees, or a majority of them, may become a body politic and corporate, and as such may take, hold and possess the title and property included in said sale, and shall have all the franchises, rights, powers, privileges and immunities which were possessed before such sale by the corporation whose property shall have been sold as aforesaid, by and upon filing in the office of the secretary of State, a certificate, duly executed under their hands and seals, and acknowledged before an officer authorized to take the acknowledgment of deeds, in which certificate the said persons shall describe by name and reference to the act or acts of the legislature of this State under which it was organized, the corporation whose property and franchises they shall have acquired as aforesaid, and also the court by authority of which such sale shall have been made, giving the date of the judgment or decree thereof, authorizing or directing the same, together with a brief description of the property sold, and shall also set forth the following particulars:

"1. The name of the new corporation intended to be formed by the filing of such certificate.

"2. The maximum amount of its capital stock and the number of shares into which the same is to be divided, speci-

fying how much of the same shall be common and how much preferred stock, and the classes thereof, and the rights pertaining to each class.

" 3. The number of directors by whom the affairs of the said new corporation are to be managed, and the names and residences of the persons selected to act as directors for the first year after its organization.

" 4. Any plan or agreement which may have been entered into pursuant to the second section hereof.

" And upon the due execution of such certificate and the filing of the same in the office of the secretary of State, the persons executing such certificate and who shall have acquired the title to the property and franchises sold as aforesaid, their associates, successors and assigns, shall become and be a body politic and corporate, by the name specified in such certificate, and shall become and be vested with and entitled to exercise and enjoy all the rights, privileges and franchises which, at the time of said sale, belonged to or were vested in the corporation which last owned the property so sold or its receiver."

Now it is contended by plaintiffs in error that the State having, by and under these provisions of law, agreed to give to the purchasers of railroad properties and franchises acquired under foreclosure proceedings, not merely the right to hold, use and operate the same, but also to confer on them the *corporate capacity* necessary for that purpose, this latter branch of the contract is violated when the State thereafter either refuses to confer such corporate capacity, or imposes any condition upon the purchasers' right to be and to become a body politic and corporate. Upon this theory the claim is made that the tax imposed by the law of 1886, which was held by the state courts to apply to their case and to the corporation they proposed to form, impaired the obligation of the contract, and was, therefore, unconstitutional. This claim was disposed of by the New York Court of Appeals, speaking by Peckham, J., as follows:

" We think it also plain that, under the reorganization acts above mentioned, when the purchasers at the foreclosure sale

undertake to reorganize under those acts, and for that purpose to file in the secretary's office a certificate, upon the filing of which they become a body politic and corporate, the corporation thus formed is a new and entirely different one from that whose property and franchises the purchasers may have bought under the foreclosure proceedings. It is true that the corporation about to be formed by the filing of the certificate has, by force of the statute, when formed, all the rights, franchises, powers, privileges and immunities which were possessed before such sale by the corporation whose property was sold; but that does not make the corporation the same by any means. The right to be a corporation, which the old corporation had, was not mortgaged and was not sold, and did not pass to the purchasers; and they only obtain such a right upon filing the certificate mentioned, and they then obtain it by direct grant from the State, and not in any degree by the sale and purchase of the franchises, etc., of the old corporation.

"The last ground argued by counsel is, we think, equally untenable. There has been no violation of any contract. These mortgages, it is true, were all executed and the bonds issued long prior to the passage of the tax act of 1886, already mentioned. The franchises of the corporations were duly mortgaged under the provisions of state laws, by which it was provided that purchasers at foreclosure sales under such mortgages could, upon compliance with the law, file certificates and become incorporated bodies. But such acts were in no sense contracts on the part of the State with persons purchasing bonds secured by such mortgages, or with future possible purchasers at foreclosure sales, that the provisions existing at the time of the mortgaging of the franchises for the incorporation of such purchasers should remain the same. I think this question has been decided in this way by the Supreme Court of the United States and further discussion of it is unnecessary. *Memphis & Little Rock Railroad* v. *Commissioners*, 112 U. S. 609."

The principles and reasoning in the decision of this court in *Memphis &c. Railroad Co.* v. *Commissioners*, 112 U. S. 609,

are directly applicable to the present case. The attempt to distinguish the two cases necessitates the drawing of distinctions too refined and theoretical to form the basis of sound judicial determination. It was said by this court in that case, (p. 621): "In many, if not in most, acts of incorporation, however special in their nature, there are various provisions which are matters of general law and not of contract, and are, therefore, subject to modification or repeal. Such, in our opinion, would be the character of the right in the mortgage bondholders, or the purchasers at the sale under the mortgage, to organize as a corporation, after acquiring title to the mortgaged property, by sale under the mortgage, if, in the charter under consideration, it had been conferred in express terms, and particular provision had been made as to the mode of procedure to effect the purpose. It would be matter of law and not of contract. At least, it would be construed as conferring only a right to organize as a corporation according to such laws as might be in force at the time when the actual organization should take place, and subject to such limitations as they might impose. It cannot, we think, be admitted that a statutory provision for becoming a corporation *in futuro* can become a contract, in that sense of the clause of the Constitution of the United States which prohibits state legislation impairing its obligation, until it has become vested as a right by an actual organization under it; and then it takes effect, as of that date and subject to such laws as may then be in force. . . . The State does not part with the franchise until it passes to the organized corporation; and when it is thus imparted it must be what the government is then authorized to grant and does actually confer." It is further said therein that "the franchise of being a corporation need not be implied as necessary to secure to the mortgage bondholders, or the purchasers at a foreclosure sale, the substantial rights intended to be secured. They acquire the ownership of the railroad, and the property incident to it, and the franchise of maintaining and operating it as such; and the corporate existence is not essential to its use and enjoyment. All the franchises necessary or impor-

tant to the beneficial use of the railroad could as well be exercised by natural persons." p. 619.

But it is urged by plaintiffs in error that, under the decisions of the highest court of New York, they cannot, as private persons or as an association, so use, maintain and operate the railroad which they have purchased. Without reviewing the New York cases cited in support of this position, we doubt whether they go to that extent. But if they so held under any law of the State passed since the execution of the mortgages under which plaintiffs in error have succeeded to the properties and franchises of the railroad sold under foreclosure, as already mentioned, *then* the question would be whether the impairment of the obligation of the contract would not consist in *denying* the purchasers the right to use the property and franchises so acquired. The fact, if it exists, that plaintiffs in error are not allowed to operate the railroad and exercise the franchises purchased without first obtaining corporate existence, in no way shows or tends to establish their contention, that said act of 1874, as amended in 1876, constituted a contract on the part of the State to confer corporate capacity upon them without imposing any tax as a prerequisite to the grant of corporate existence. Again, there is nothing in the acts of 1874 and 1876 which would or could have exempted the railroad corporation, to whose rights, privileges and franchises the plaintiffs in error have succeeded, from the payment of taxes such as the State by its legislation might thereafter impose. If they were not in fact, they could constitutionally have been made subject to the provisions of said act of 1886, and been required to pay the tax of one-eighth of one per centum upon the amount of their capital stock. The settled rule of this court and of the courts of New York, requires that exemption from taxation, so essential to the existence of government, must be expressed in the clearest and most unambiguous language, and not be left to implication or inference. *Vicksburg, Shreveport &c. Railroad* v. *Dennis,* 116 U. S. 665; *Chicago, Burlington &c. Railroad* v. *Guffey,* 120 U. S. 569; *Wilmington & Weldon Railroad* v. *Alsbrook,* 146 U. S. 279, 294; and *People ex rel. Ins. Co.* v. *Davenport,* 91 N. Y. 574, 586.

The plaintiffs in error acquired the properties and franchises of these corporations, which were subject to the taxing power of the State, after the act of 1886 was passed and went into effect. There is no provision of the law under which they made their purchase requiring them to become incorporated; but, desiring corporate capacity, they demanded the grant of a new charter under which to exercise the franchises so acquired, without compliance with the law of the State existing at the time their application for incorporation was made. We are clearly of the opinion that the act of 1874, as amended in 1876, set up and relied upon by them, does not sustain such a claim. The provisions of that act do not constitute a contract on the part of the State with either the corporations, or the mortgagees, bondholders or purchasers at foreclosure sale. They are merely matters of law instead of contract, and the right therein conferred upon purchasers of the corporate properties and franchises sold under foreclosure of mortgages thereon, to reorganize and become a *new corporation*, is subject to the laws of the State existing or in force at the time of such reorganization and the grant of a new charter of incorporation. *Memphis &c. Railroad Co.* v. *Commissioners, supra.*

There is another difficulty in the way of sustaining the claim of the plaintiffs in error in this case. The Constitution of New York, providing for the formation of corporations under general laws, reserves to the State the power to alter, change or repeal all such general laws. The Revised Statutes of the State, c. 18, title 3, sec. 8, vol. 3, 8th ed., p. 1724, provides that "the charter of every corporation that shall be granted by the legislature shall be subject to alteration, suspension or repeal in the discretion of the legislature"; and by the general railroad law of New York, c. 140, Laws of 1850, § 48, it is provided that "the legislature may, at any time, annul or dissolve any corporation formed under this act, but such dissolution shall not take away or impair any remedy given against such corporation, its stockholders or officers, for any liability which shall have been previously incurred."

In the case of *The People* v. *O'Brien,* 111 N. Y. 1, cited by counsel for the plaintiffs in error, while the court held that it

was not within the power of the legislature to destroy the property rights of a corporation, it was not questioned that the legislature could destroy the existence of the corporation.

In the still later case of *The Mayor &c. of the City of New York* v. *The Twenty-third Street Railroad Company*, 113 N. Y. 311, it was directly held 'that the right reserved to the legislature to alter or repeal the charter of a corporation included the right to tax a corporation upon its franchises as such instead of exacting license fees, as before prescribed. Earl, J., speaking for the court there, said: "As it (the legislature) has the power utterly to deprive the corporation of its franchise to be a corporation, it may prescribe the conditions and terms upon which it may live and exercise such franchises. It may enlarge or limit its powers, and it may increase or limit its burdens." This construction of the statutes of the State by its highest court is of controlling authority. *Bucher* v. *Cheshire Railroad*, 125 U. S. 555; *Gormley* v. *Clark*, 134 U. S. 338; and *Stutsman County* v. *Wallace*, 142 U. S. 293. The right being thus reserved to the legislature, under the power to alter or repeal the charter of corporations, not only to terminate their existence, but to impose upon them increased burdens, it cannot be properly asserted that the act of 1886, imposing the tax complained of, was unconstitutional, even though the act of 1874 created a contract with corporations and their mortgagees to whose right, properties and franchises plaintiffs in error have succeeded. The corporations, mortgagees and bondholders under such circumstances acquire their rights subject to the reserved power of the legislature to enlarge or diminish the franchises conferred, and to increase or reduce the burdens, thereon. Purchasers succeeding to properties and franchises of corporations thus situated cannot occupy any better position in respect to their application for a new charter of incorporation.

In *Hamilton Gas Light Co.* v. *Hamilton City*, 146 U. S. 258, 270, it was said by this court, that "a legislative grant to a corporation of special privileges, if not forbidden by the Constitution, may be a contract; but where one of the conditions of the grant is that the legislature may alter or revoke it, a

law altering or revoking, or which has the effect to alter or revoke, the exclusive character of such privileges, cannot be regarded as one impairing the obligation of the contract. . . . The corporation, by accepting the grant subject to the legislative power so reserved by the Constitution, must be held to have assented to such reservation," citing, in support of those views, *Greenwood* v. *Freight Co.*, 105 U. S. 13, 17. This principle should be especially maintained and applied in cases like the present, where the taxing power of the State is involved.

We do not deem it necessary to consider other points made in the briefs of counsel. They are of minor importance, and do not affect or control the principal question presented. Our conclusion is that there is no error in the judgment complained of, and that the same should be

*Affirmed.*