WIRT ADAMS, STATE REVENUE AGENT, v. TOMBIGBEE MILLS.

1. CONSTITUTIONAL LAW. *Taxation. Exemption. Factories. Laws* 1882, *p.* 84.

    The act of 1882 (laws 1882, p. 84), to encourage the establishment of factories and to exempt them from taxation, is constitutional and has never been repealed. *Yazoo, etc.. R. R. Co.* v. *Adams,* 77 Miss., 194, distinguished.

2. SAME. *Constitution* 1890, *sec.* 181.

    The exemption from taxation granted by said act of 1882 was continued in force, subject to legislative repeal, by sec. 181, constitution of 1890.

3. SAME. *Tenement houses of employes.*

    The tenement houses and the land on which they stand, occupied by the employes of a factory, not located on the grounds of the factory, are not exempt from taxation under said act of 1882.

4. SAME. *Capital stock.*

    The capital stock of a factory is not exempt *eo nomine* by said act of 1882; the whole of it should be estimated for taxation at its market value, and if its market value exceeds the amount invested in property exempted by the act, the excess alone should be taxed.

5. SAME.   *Charter provisions.*

    Nothing can be gained by a corporation claiming exemption under said act by the provisions of its charter granted under general laws. Such a charter must square with the act.

FROM the circuit court of Lowndes county.

HON. EUGENE O. SYKES, Judge.

Wirt Adams, state revenue agent, the appellant, acting under a statute, caused the assessor of Lowndes county to assess the capital stock of the Tombigbee Mills, the appellee, for taxation for the years 1888 to 1897, inclusive. The board of supervisors refused to confirm the assessment, and the state revenue agent appealed to the circuit court. A trial was there had, resulting in a verdict and judgment in favor of the mills, from which Adams, state revenue agent, appealed to the supreme court. The questions involved were the constitutionality of the act of 1882 (laws 1882, p. 84), whether said act had been repealed, and the extent of exemptions from taxation thereunder.

*Fewell & Son*, for appellant.

If we concede that the act of 1882 was not unconstitutional, because it made no distinction between the property of corporations and individuals, the main question is, Did the code of 1892, § 3744, operate as a repeal of the act?

It will hardly be contended, in view of the decisions of this court, that any one, corporation or individual, could, under the constitution of 1869, acquire a vested right to exemption from taxation, even without the provision of that constitution that all property of corporations should be subject to taxation. The appellee made no contract with the state by accepting the act. It was a general statute, and would be as repealable as a statute exempting a cow to the poor man. If the legislature had the power to exempt for ten years, why would it not have had the power to exempt for one hundred years, and why could it not have exempted for any period of time half the property of the state?

But, under .the constitution of 1869, it is too plain for argument that there could not be a vested right to exemption, and there is to be considered as written into every act of the legislature the constitutional provision that all the property of corporations and of individuals shall always be subject to taxation. Nor will it be argued that the constitution of 1890 ratified or confirmed the act of 1882 in the sense that the constitution of 1890 took away the power of the legislature to repeal the act, for exemptions under existing laws were expressly made dependent upon the legislative will.    Section 181.    And so the question is, Did the code of 1892 repeal the act of 1882 ?    In view of the decision of this court in the case of *Wirt Adams* v. *Yazoo, etc., R. R. Co.*, 77 Miss., 194, in which it was held that the code of 1892 repealed exemptions under railroad charters, we feel some delicacy in arguing the proposition, for the court needs no support from us.

The code of 1892, by its terms, repealed "all acts and parts of acts repugnant to the provisions contained in said code." The act of 1882 is certainly repugnant to the provisions of § 3744 of the code, and emphasis is given to the section by the use of the words, "the following property, and no other, shall be exempt from taxation."    Moreover, the express exemption by paragraph (*v*) of all permanent factories "hereafter" established, makes an exception which strengthens the rule, and it also invokes the maxim *expressio unius exclusio est alterius.* Aside from the code provision, § 3, there is a repeal by implication, under the general rule, of the act of 1882 because of repugnancy.    Both statutes could not be in force at the same time.    Obviously it was the purpose of § 3744 to expunge all previous exemptions and to conform the law to the new constitution.    The policy of the state has been settled by the constitution of 1890.

Wherever there is repugnancy there is repeal.    Even a statute which is not repugnant in its provisions to a former one, but clearly intended to prescribe the only rule in the case pro-

vided for, repeals the former statute. *Swann* v. *Buck*, 40
Miss., 269; *Gibbons* v. *Bittenum*, 56 Miss., 232; *State* v.
*Order of Elks*, 69 Miss., 895; *Pons* v. *State*, 49 Miss., 1; 23
Am. & Eng. Enc. L., pp. 479 (3) and 483 *et seq.*

Suppose that the constitution of 1869 remained in force,
would a factory established, say in 1893, be exempt from tax-
ation in the face of § 3744 of the code of 1892 ? If so, why
say in paragraph (*v*) "all factories hereafter established?"
Exemptions from taxation are not favored; the policy of the
law is that all property shall bear its due proportion of taxa-
tion. If it be argued that the appellee acted on the faith of
the act of 1882, we answer that the appellee was bound to
know that under the constitution it could not get a vested
right. That has been decided by this court. And it is to be
held as bound to know that the act was repealable at the will
of the legislature. If it be contended that good faith requires
that the appellee shall enjoy the exemption, we say that it is
not for the courts to decide that question; it is a question for
the legislature. The court is confined to the naked question of
repeal or nonrepeal. The constitution of 1890 expressly rele-
gates that question to the legislature and leaves no discretion to
the courts. No decision had been rendered prior to the time
of the establishment of appellee's factory, no decision has since
been made, to the effect that under the constitution of 1869
there could be any irrepeable exemption from taxation; on the
contrary, all the decisions ever made on the question were di-
rectly to the contrary. The peremptory instruction ought not
to have been given, because some of the stock of appellee rep-
resented property not embraced in the act of 1882. Presump-
tively the appellee has, during all these years, been renting its
tenement houses to its operatives or officials and making profit
by such renting. The act of 1882 does not embrace, in terms,
the capital stock of corporations, but only the machinery, the
manufactured goods, and the material used therefor, the build-
ings in which the machinery is located and grounds upon which

situated, or which may be within the necessary inclosure around such buildings; also all warehouses and other storehouses used exclusively by the company, etc.   The exemption is of visible property, not capital stock.   Under the strict rule of construction applicable to exemptions claimed from taxation, we submit that it is doubtful whether the act of 1882 covers capital stock, even though the capital stock was invested in machinery, etc.

*Sykes & O'Neill,* and *J. M. Boone,* for appellee.

The contention of the appellee is that the decision in the case of *Adams* v. *Yazoo, etc., R. R. Co.,* 77 Miss., 194, does not affect or control this case, or in the least militate against our contention.   Those reasons, briefly stated, are:

(*a*) Because the appellee corporation was chartered with no irrepealable feature, March 28, 1887, under a general law applicable to all the factories in the state of the same class, to wit: an act of the legislature of the state of Mississippi approved March 9, 1882, and which was enacted under and in pursuance of section 13, article 12, of the constitution (1869), and that under said act of the legislature and constitutional provision, the real and personal property of said corporation, which represented its capital stock, was, and is expressly exempt from all taxation, state, county and municipal, for a period of ten years from the time it was completed and put in operation, to wit: May, 1889.

(*b*) Because, as the record shows, the appellee is a corporation with a charter similar to the charter construed in *Mississippi Mills* v. *Cook,* 56 Miss., 40, and similar to charters of other corporations which have been similarly construed by this court subsequently to the case of *Mississippi Mills* v. *Cook,* and that appellee has acted and invested its capital on the faith of such decisions, and which, in the language of Justice Whitfield, in *Adams* v. *Yazoo, etc., R. R. Co.,* "might thus be said to constitute a rule of property."

(*c*) Because the saving clause of article 181, constitution of

1890, to wit: "Exemptions from taxation to which corporations are legally entitled at the adoption of this constitution, shall remain in full force and effect for the time of such exemption as expressed in their respective charters, or by general law, unless sooner repealed by the legislature," recognized and embraced the validity of the exemption claimed and relied on by appellee, and continued its exemption in force for the remainder of the unexpired period of ten (10) years, the said general law under which appellee was chartered not having been repealed by the legislature, and the precise corporate existence of the "Tombigbee Mills" having been retained and preserved intact from the date of its organization and charter to the present time.

Thus, it will be seen that the difference between the issues involved in the instant case, and the case of *Adams* v. *Yazoo, etc., R. R. Co.* supra, are radical and fundamental.

1. The charter of the Yazoo & Mississippi Valley Railroad Company was the grant of a "special privilege under a special charter to a special railroad," and, therefore, condemned; whereas, the exemption claimed in the instant case, was granted under " a general law applicable to all the factories in the state of the same class," and, therefore, was authorized by the constitution.

2. That the "Tombigbee Mills" was chartered, and established its factory under and upon the faith of the act of 1882 and the decisions of the supreme court construing the power and right of the legislature, under the constitution, to enact it and similar statutes; whereas, the railroad came into existence only by the consolidation of two separate and distinct roads, and after the destruction of each had been completed, and was not built or constructed upon the faith of any decision ever rendered by this court, up to the time of the grant of its charter, involving the constitutionality of the twenty-first section, authorizing the irrepealable exemption.

3. That the exemption claimed in the charter of the railroad

contained an irrepealable feature; whereas, the charter of the Tombigbee Mills, limits the exemption to ten (10) years from the commencement of operations, and is repealable.

4. That, as set out in the learned opinion of Justice Whitfield in said railroad case, the section (21) of the charters granted in 1882 and 1884, to one of the roads thus consolidating, and under which the exemption was claimed by the consolidated company, " was not only not considered, argued or decided in *Mississippi Mills* v. *Cook*, but which, by virtue of its irrepealable feature and its special grant of an exclusive privilege to a special corporation, would have been condemned by the reasoning of that very case."

5. That, by virtue of said consolidation, the exemption claimed by said Yazoo & Mississippi Valley Railroad Company (even granting that it was ever valid) was not embraced by the protection of section 181 of the constitution of 1890; whereas, the exemption claimed by the "Tombigbee Mills," by reason of its never having changed its corporate existence, but retaining " the precise corporate existence " it originally had, is continued by virtue of said constitutional provision.

6. That, though the policy of the legislation of the state of Mississippi as to taxation of railroads may have been changed by the code of 1892, repealing all former exemptions of all railroads from taxation, yet the policy as to permanent factories of the class named, as evidenced by subdivision (*v*) of § 3744, is continued, that subdivision negativing any implied revocation of the exemption as to factories.   And this is so for the additional reason, stated in Black on Interpretation of Laws, p. 112, thus, " Every new statute should be construed in connection with those already existing in relation to the same subject-matter, and all should be made to harmonize and stand together, if that can be done by any fair and reasonable interpretation, and if the new act does not expressly declare the repeal of an earlier statute, it will not be construed as effecting such repeal unless there is such repugnancy or conflict between

the provisions of the two acts as to show that they could not have been designed to remain equally in force.''

We are not unmindful of the requirements of § 498, code 1880, brought forward as § 3758 in the code of 1892, touching the assessment of the capital stock of corporations, and the construction given it in *State* v. *Simmons,* 70 Miss., 485; nor are we nonobservant of the fundamental principle of law reiterated in *Railroad* v. *Thomas,* 65 Miss., 553, and in *Ice Company* v. *Greenville,* 69 Miss., 86, to the effect that a statute purporting to exempt persons or property from taxation must be strictly construed, and that, to create such exemptions, it must express the legislative intent therefor in terms so clear and unambiguous as to preclude reasonable doubt or controversy in respect thereto; but our contention is that the legislative intent expressed in the said act of 1882, exempting from taxation for a period of ten years the property of the Tombigbee Mills, and in which its capital stock is invested, is so clear and unambiguous as to preclude a reasonable doubt or controversy in respect thereto. We claim that our capital stock has all the while been invested in property which is exempt from taxation for the period named under the said act of 1882, and that, therefore, as held in *State* v. *Simmons,* supra, in assessing a corporation for former years, during which it has escaped taxation, under § 498, code 1890, brought forward as § 3758, code 1892, it is the market and not the par value of the capital stock that is controlling. It is to be assessed at its market value. This being the law, and the fact being that the capital stock of the Tombigbee Mills was much of the time greatly below par, and only reached par value within the past few years, and is not shown to exceed in value the sum of $141,000, and all of which is shown to be invested in its property shown to be exempt from taxation under the said act of 1882, then there is no part of the capital stock of the said Tombigbee Mills that was subject to tax for the years thus assessed.

WHITFIELD, C. J., delivered the opinion of the court.

The appellee was chartered March 27, 1887, under the general statute of this state, approved March 9, 1882, entitled "An act to encourage factories in this state, and to exempt them from taxation," section 1 of which is as follows:

"SECTION 1. *Be it enacted by the legislature of the state of Mississippi,* That to encourage the introduction of factories in this state, the machinery used for the manufacture of cotton or woolen goods, yarns or fabrics, composed of these or other materials, or for the making of all kinds of machinery or implements of husbandry, or all other things or articles not prohibited by law; the manufactured goods and the material used therefor, the buildings in which the machinery is located and ground upon which situated or which may be within the necessary inclosure around such buildings, also all warehouses and other storehouses used exclusively by the company in its business and adjacent to the factory and its inclosure, and also the offices of the officers and employes adjacent to and located on the grounds of such factory, and used by them alone (but shall not apply to any railroad shops or machine works which are the property of railroads), and no other property shall be, and is hereby declared to be, exempt from all taxation, state, county and municipal, for the period of ten years from the time such factory is completed and in operation."

It will be carefully noted that this is n∅t a special act, attempting to grant a special exemption to a particular corporatiod, as was the case in *Yazoo, etc., R. R. Co.* v. *Adams,* 77 Miss., 194. Nor is it a statute applicable to all corporations of the same class even constructing such factories, whilst subjecting such factories to be constructed by individuals to taxation. It is a broad general statute, applicable to the particular kind of property specified—cotton factories to be built—whether owned by corporations or individuals.

In *Yazoo, etc., R. R. Co.* v. *Adams,* 77 Miss., 194, we said: "*Mississippi Mills* v. *Cook* decided that the property of private

corporations for pecuniary profit was and should remain sub-
ject to taxation.    It expressly held that while an exemption
might be granted, yet it might at any time be repealed by the
legislature, and, further, that no exemption could be granted to
any private corporation for pecuniary profit by a special act
extending a special exemption to that special corporation alone,
but that, in order to make any such exemption valid, it must
be extended to all corporations for pecuniary profit of the same
class and in the same situation.    And the precise exemption
asserted in that case was asserted distinctly under the acts of
April 1, 1872, and of April 17, 1873, amendatory thereof, set
out at pages 42 and 43 of 56 Miss.   The Mississippi Mills did
not claim that it had a valid exemption by virtue of a special
act granting such special exemption to the Mississippi Mills
alone, but that it had such exemption in common with all other
factories similarly situated, by virtue of said general law.    The
exemption set up here under the twenty-first section of the Mo-
bile & Northwestern charter is wholly different.    The claim
here is that this particular railroad is entitled to this special
exemption, which it is conceded is not now and never was ex-
tended to all other railroads similarly situated in this state.
And, further, this exemption is irrepealable on its face, and the
Mississippi Mills case decided that no irrepealable exemption
was constitutional.    It is certainly obvious from these consid-
erations alone that *Mississippi Mills* v. *Cook* is no authority to
sustain the exemption set up here.    It is further clear that the
constitutionality, under the constitution of 1869, of a legislative
grant of exemption to private corporations for pecuniary profit,
if it embraced all of the same class, the property of individuals
being at the same time taxed, was not argued, considered or
decided in *Mississippi Mills* v. *Cook*, but was conceded by the
attorney-general and the judges who wrote the majority opin-
ions.    One of the vices of the decision in *Mississippi Mills* v.
*Cook* is that it did not hold that all property of such corpora-
tions was required to be taxed by the terms of the constitution

(secs. 13, 20, art. 20) just as and when the property of individuals was. Instead of doing this, the court decided that all such property was free from taxation, unless the legislature expressly subjected it to taxation, even though the property of private individuals was taxed, inverting the rule of the constitution. It was certainly an idle performance to declare, as the court did declare, that the whole effect of the constitutional provision was to render the property of private corporations for pecuniary profit liable to taxation. That everybody knew, and to so limit the constitutional declaration was to emasculate it.

"More than thirty-five years had intervened between the previous constitution of the state and the constitution of 1869. When that previous constitution was adopted (in 1832) the state was young, and had little experience with the grasping demands of corporations for grants of exclusive privileges; but the experience of more than thirty-five years had taught it wisdom in this regard—wisdom learned long prior by other commonwealths like California and Iowa, from the constitution of which latter state the provisions of the constitution of 1869 in question were doubtless borrowed; and so section 13, of article 12, was put in the organic law of the land, beyond the reach of legislative control, for the express purpose of formulating a fundamentally great line of public policy prohibiting any difference in the exercise of the taxing power between the property of individuals and the property of private corporations for pecuniary profit. The court in *Mississippi Mills* v. *Cook*, 56 Miss., at pages 51, 52, looked too narrowly at the mere word 'subject.' It should have taken broadly the whole section into view and deduced from all its terms the meaning of the provision. Judge Campbell, in *Beck* v. *Allen*, 58 Miss., 177, most wisely said: 'Sublety and refinement and astuteness are not admissible to explain away the expression of the sovereign will. The framers of the constitution and the people who adopted it must be understood to have intended the words em-

ployed in that sense most likely to arise from them on first reading them.' This is the doctrine announced by Cooley and Story, and our construction of the meaning of section 13, to-wit, that it required the property of private corporations for pecuniary profit to be taxed just as and when—'the same as'—the property of individuals, so that one would not be exempt and the other taxed, is the identical construction placed upon the same words by the supreme courts of the United States, of Alabama, Arkansas, California, Florida, and Iowa. We prefer now to distinctly align ourselves with the supreme court of the United States on this important question, and overrule the *Mississippi Mills* v. *Cook* in so far as it held that the property of private corporations for pecuniary profit was not, by constitution 1869, article 12, sections 13, 20, expressly directed to be taxed just as the property of individuals. The decisions of the United States supreme court to which we refer are as follows: *Railroad Co.* v. *Palmes*, 109 U. S., 248, s.c. 3 Sup. Ct., 193; *Railway Co.* v. *Berry*, 113 U. S., 475, s.c. 5 Sup. Ct., 529; *People* v. *Cook*, 148 U. S., 408, s.c. 13 Sup. Ct., 645; *Keokuk & W. R. Co.* v. *Missouri*, 152 U. S., 303, 310–312, s.c. 14 Sup. Ct., 592.

"The decisions of the state supreme courts to which we have referred are as follows: *City of Davenport* v. *Chicago, R. I. & P. R. Co.*, 38 Iowa, 635; *People* v. *McCreery*, 34 Cal., 432; *Fletcher* v. *Oliver*, 25 Ark., 289; *Palmes* v. *Railroad Co.*, 19 Fla., 231 (which collates the constitutions of Wisconsin, Missouri, Illinois, Kansas, Mississippi, Alabama, Arkansas, and Louisiana)." We then reviewed the facts in that case and added: "It will thus be clearly seen: (1) That the exemption claimed in *Mississippi Mills* v. *Cook*, was one claimed under a general law applicable to all the factories in the state of the same class; whereas, the exemption claimed here, to wit: the twenty-first section of the charter of the Mobile & Northwestern Railroad Company, is an exemption attempted to be granted to this special corporation, and not to all the other railroads in

the state, a special privilege under a special charter to a special corporation. (2) That the Mississippi Mills had established their factory, after the passage of the acts of 1872 and 1873, on the faith of those acts as a rule of property; whereas, the Louisville, New Orleans & Texas Railway Company never came into existence, as admitted by counsel for the railroad, until the twelfth day of August, 1884, by the consolidation of the Baton Rouge Railroad and the Vicksburg & Memphis Railroad, after the construction of the road 'had been practically finished in July, 1884. (3) That the exemption claimed in *Mississippi Mills* v. *Cook* had no irrepealable feature; whereas, the exemption set up under the said twenty-first section is on its face irrepealable, and was so judicially declared to be ·in the Lambert case itself. (4) That the Louisville, New Orleans & Texas Railway Company claims under charters granted in 1882 and 1884, asserting as its exemption this twenty-first section, the unconstitutionality of which, as violative of section 13 of article 12 of the constitution of 1869, was not only not considered, argued, or decided in *Mississippi Mills* v. *Cook*, but which, by virtue of its irrepealable feature and its special grant of an exclusive privilege to a special corporation, would have been condemned by the reasoning of that very case. (5) And not only is it true that the particular exemption claimed here, under this twenty-first section, was not argued or decided in *Mississippi Mills* v. *Cook*, but no other decision was ever rendered in this state in which the constitutionality of this twenty-first section was even involved until *McCulloch* v. *Stone*, decided in 1886, four years after the grant of the charter of the Louisville, New Orleans & Texas Railroad Company. (6) From which it necessarily follows that that road was not built on the faith of any decision ever rendered in this state, up to the time of the grant of its charter, which even involved the constitutionality of said twenty-first section, and that the claim that it was organized or built on the faith of such decision, operating as a rule of property, is utterly unfounded and ab-

surd.    (7) That the Taylor case was neither more nor less than a fictitious case, which misled the court by the misstatement of fact that the Vicksburg, Pensacola & Ship Island Railroad was one of the constituent members of the Louisville, New Orleans & Texas Railway, and its charter was a constituent charter of that railroad, and that the Taylor case is authority for nothing. (8) That the Lambert case was decided at the March term, 1893, eleven years after, not before, the grant of the charter of the Louisville, New Orleans & Texas Railway Company; and it is hence, utterly incomprehensible to the legal mind how anybody could invoke that case, under the doctrine of *stare decisis*, as affording a rule of property to a company constructed under a charter granted before it was rendered.    Such claim becomes more incomprehensible still when the further fact is recalled that the consolidation of the Louisville, New Orleans & Texas and Yazoo & Mississippi Valley into the present Yazoo & Mississippi Valley Railroad Company, took place October 24, 1892, long before the decision in the Lambert case.

"Let us get out of the realm of idle and reckless assertion into the realm of fact, and inquire more particularly and accurately exactly what was decided, even in the opinion of the court, which went far beyond the record, in *Mississippi Mills* v. *Cook*.    The vice of that decision is that it looked exclusively to the word 'subject,' in section 13, article 12, and failed to give force and effect to the words, 'the same as that of individuals.'    When we say that the court's construction of the word 'subject' attributed to it some supposed magical effect, we are simply reiterating the language of Chalmers, J.    He said (56 Miss., 69): 'I find no such magic as my colleague in the words, "shall be subject to taxation the same as that of individuals."    To me they have no meaning other than that which would be conveyed by the equivalent phrase, "shall be treated or shall be dealt with the same as that of individuals."    This and many similar phrases which might perhaps be suggested convey one and the same idea, namely, that the lawgiver,

in the imposition of taxes, shall know no difference between the property of individuals and that of corporations for pecuniary profit.    The opinion of the court declares as its gist that section 13 was not mandatory upon the legislature to tax the property of private corporations for pecuniary profit whenever the property of individuals was taxed.    It distinctly put the property of such private corporations, as to the power to tax them or exempt them, in a class by themselves, distinct from the class of individuals.    In other words, it held that, although the property of individuals might be taxed, yet the property of such corporations might be at the same time exempted by the legislature from taxation, provided such exemption extended to all corporations of the same class in the state.    We think it is perfectly manifest that the language, ' the same as the property of individuals,' imperatively commanded the legislature, whenever they tax the property of private individuals, to tax also the property of such corporations, and under the same rules of equality and uniformity.

"It was well said by Campbell, judge, that this provision of section 13 ' sprang from the experience that corporations were in the habit of asking and obtaining legislative exemption from liability to taxation.'    56 Miss., 56.    That experience the state had acquired in the thirty-five years elapsing between the constitution of 1832 and the constitution of 1869, and that experience was wisely availed of to put an end to the grant of exclusive privileges to such corporations.    It marked a new era in the history of corporate taxation in this state.    It laid down a fundamentally new line of great public policy, one that will be found essential to the preservation of the rights of the people, as is abundantly attested by the experience of older states dealing with such corporations.    It is that feature of the decision, thus holding that this section 13 merely permitted the taxation of such corporations, but did not require that taxation whenever the property of individuals was taxed, and in just the same manner, in all respects, as the property

of private individuals was taxed, which we now condemn and overrule.ᐧ In no other respect do we interfere with the decision in that case. That case decided that under the constitution of 1869 the legislature had the power to select for exemption from taxation certain designated kinds of property, such as the agricultural implements of farmers, the tools of the mechanic, etc. Such exemption of particular kinds of property, for reasons of public policy, the constitution allowed the legislature to grant, and when granted, it applied to such property, whether owned by individuals or such corporations. And to permit such exemption was perfectly consistent with holding that said section mandatorily required the legislature to tax the property of such corporations whenever and just as it taxed the property of individuals. The vice of the holding of the court was in disregarding and repudiating the correlation by the constitution of the property of such corporations and the property of private individuals in the same category as to the right to tax and the duty to tax, and in declaring that under that section the legislature might put into operation a scheme of taxation which taxed property of all the private individuals in the state, and at the same time, at the will of the legislature, exempt all property of such corporations from any taxation whatever. The constitution plainly and clearly yoked together indissolubly the property of such corporations and the property of individuals, and subjected both alike to the same taxation, to be imposed under the same rules of equality or uniformity. The legislature might not exempt all the property of private corporations for pecuniary profit, and tax all the property of private individuals, but it might exempt certain selected kinds of property, in pursuance of a wise public policy, whether that property belonged to such corporations or to private individuals.

"One other observation. The case before us most emphatically does not present a claim to exemption under a charter identical with the charter in *Mississippi Mills* v. *Cook*, nor the

case of any corporation which has acted on the faith of a decision construing a charter identical with the charter in the case of *Mississippi Mills* v. *Cook*, and which might thus be said to constitute, for such corporation, acting on it and investing its capital on it, a rule of property. It will be time enough to decide that precise question when that question shall be presented."

A case stronger than that is now before us in this respect, that this act of 1882, under which appellee was organized, applies not only to all corporations of the same class, but to the specified property in the hands of individuals or corporations. It does not select certain persons or certain corporations, and seek invidiously to extend to them special privileges denied to all others. But in furtherance of a great and just public policy, always cherished in this state, namely, the establishment of cotton factories for the consumption of the product on which our material wealth rests, it did, as under the constitution of 1869 it might do, select certain kinds of property, whether owned by individuals or corporations, and exempted that selected property from taxation. Manifestly this exemption contained in the said act of 1882 was valid, and it is clear it has never been repealed, and it was not sought to be made irrepealable. This appellee never lost its exemption by consolidating with any other corporation. It has always retained "the precise corporate existence" it originally had. Its exemption was therefore continued by section 181 of the constitution of 1890, subject to legislative repeal, but it has never been repealed.

The legislation with respect to railroads and cotton factories, under this act as to this matter of exemption, is materially different as to legislative repeal. Section 182 of the constitution of 1890, expressly authorized exemptions from taxation of manufactories and other new enterprises of public utility, for five years from the date of the charter, in the case of a corporation and from the commencement of the work in the case of in-

dividual enterprises, but no such provision was made for rail-roads. And § 3744, subdivision (*v*) of the code of 1892, passed in pursuance of section 182 of the constitution of 1890, provides for these exemptions as to manufactories of various kinds. Here is both constitutional and legislative recognition of the exemption in this case as still existing. For it would be obviously absurd for the legislature to enact said subdivision (*v*) of § 3744, offering this five years exemption to cotton factories for the future, and at the same time repeal the sort of an exemption we have before us here. That would be "keeping the word of promise to the ear, but breaking it to the hope." Individuals and corporations would distrust as to the future, if an exemption like this, validly granted, under general law and on the faith of which appellee has invested its money, should be repealed. But a very different state of case existed, as already pointed out, as to the exemption denied in *Yazoo, etc., R. R. Co.* v. *Adams*, 77 Miss., 194. There the exemption was void in its origin, being a special grant by a special act, to a special corporation; and that exemption was repealed. It is not at all difficult to see the wisdom of the public policy which makes the discrimination between the exemption here and that in *Yazoo, etc., R. R. Co.* v. *Adams.* Let it be specially noted that the discrimination is pointedly made in this very act, which, while exempting the machinery, shops, etc., of factories, expressly says "it shall not apply to any railroad shops or machine works while on the property of rail-roads."

But it is clear that the real estate assessed at $9,000, being the tenement houses of the employes, is not exempt under the act of 1882. It is not "located on the grounds of said factory." And it is equally clear that the capital stock of said appellee is not exempt *eo nomine* within and under said act. Section 6 of the charter uses the word "property"—not the act of 1882. The charter must square with the act of 1882; the exemption must be such as that act allows. *Strictissimi juris* is the rule

against the exemption and in favor of the state.   The word
"property" in the charter must be held to mean such prop-
erty as is specified in the act of 1882, the visible property
therein named.   But there is an agreement in the record that
the entire capital stock has been all along invested in the said
exempt plant, except $60,000 of it, which it is also agreed has
been invested all along in the purchase of the raw material,
which is also exempted from taxation.

It is not here a question as to the power of the legislature to
exempt such visible property and tax the capital stock, but the
question here is, What did the legislature intend to exempt?

We think it is clear that the capital stock should be estimated
at its market value, and, if that market value exceeds the
amount of the capital stock so invested in the exempted plant
and raw material—that is to say, in this case, all the capital
stock—the excess of the market value over the amount of cap-
ital stock so used to purchase the plant and the raw material—
in this case, all the capital stock—alone should be taxed.   That
is to say, all that can be taxed here, under the agreement in
this record, would be the excess in value of the market value
of the capital stock over its par value.   All this is matter of
evidence.   Clearly this was the legislative intent, for otherwise
the exemption would be one in name merely.   To exempt the
plant and yet tax that amount of the capital stock used to pur-
chase the plant, would be to give with one hand and take back
with the other.   This is the doctrine of *State* v. *Simmons*, 70
Miss., 485, and is thoroughly set forth in 2 Thompson on
Corporations, sections 2813–2819.   See especially section 2813.

*For the reasons indicated, the judgment is reversed and cause
remanded.*